**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| BRANDON STRAKA, WALKAWAY CAMPAIGN PAC, AND WALKAWAY FOUNDATION | CASE NO. 8:24-CV-00024-JFB-SMB |
| Plaintiffs, | |
| vs. | BRIEF IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANT @ZIBTARA a/k/a MIRANDA DEW |
| DAVID S. CLEMENT, @BRAWNDOSNITCHKA, @ CHICHIVISION18, @MIKECLOVER7, @STONEPGH, @THATSQUITEAWALK, @HIGHENANONTOO, @TOOKEJK, @ZIBTARA a/k/a MIRANDA DEW | |
| Defendants. | |

## INTRODUCTION

This is the second in a series of baseless lawsuits filed by Brandon Straka against his critics. His first lawsuit was against NBC Universal and television news anchor Chris Hayes. In that case, Straka alleged that Hayes defamed him by speaking publicly about Straka's involvement in the January 6 attack on the U.S. Capitol. This Court dismissed the lawsuit on the pleadings, finding Straka failed to state a claim upon which relief may be granted. *Straka v. NBC Universal Media, LLC*, No. 8:22CV434, 2023 WL 5041614 (D. Neb. Aug. 8, 2023).

This lawsuit involves similar allegations against different defendants. Here, Straka and two affiliated entities allege that Defendant Miranda Dew and others engaged in "cyberstalking" by posting messages about Straka's involvement in the January 6 riot. Straka further contends that Defendants improperly created a critical

1

commentary website using the tradename "#WalkAway" and interfered with "business relationships." Plaintiffs seek damages under state and federal law.

Plaintiffs' lawsuit fails in its entirety for four separate and independent reasons. First, the Court lacks personal jurisdiction over Miranda Dew under a traditional minimum contacts analysis. Dew does not live or own property in Nebraska, and none of the allegations contained in Plaintiffs' Complaint arise out of her limited contacts in this state. Because Dew has not purposefully availed herself of the benefits and protections of the forum state, the Complaint should be dismissed against Dew for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

Second, Nebraska is not the proper venue for this dispute. The only reason why Straka filed this case in Nebraska is because *he* lives in this state. But venue focuses on the residency of the *defendants* and where a substantial part of the acts or omissions occurred. In this case, all known defendants reside outside of Nebraska, meaning all alleged acts and omissions occurred outside of the state. For this additional reason, Plaintiffs' Complaint should be dismissed.

Third, Plaintiffs have failed to state a claim upon which relief may be granted. The entire Complaint fails under governing Eighth Circuit precedent because Plaintiffs do not differentiate between any of the nine defendants. Instead, Plaintiffs allege in a conclusory fashion that all "defendants" are responsible for all the purported wrongs alleged in the Complaint. These "shotgun-style allegations of misconduct" are insufficient to state a claim because they do not inform "any

particular defendant of the specific claims against them." *Quintero Cmt. Ass'n. Inc. v. FDIC*, 792 F. 3d 1002, 1010 (8th Cir. 2015).

Further, Plaintiffs' claims against Dew fail as a matter of law. Plaintiffs' trademark and unfair competition claims should be dismissed because, among other reasons, there is no allegation of commercial activity. The state law claims fail because they are barred by the applicable statute of limitations or are improperly pled under Nebraska law—or both. Accordingly, to the extent the Court exercises jurisdiction over Plaintiffs' claims, they should be dismissed for failure to state a claim under Rule 12(b)(6).

Fourth, the Court lacks subject matter jurisdiction over Plaintiffs' trademark infringement claim. Plaintiffs' allegations demonstrate they are, at most, non-exclusive licensees of the "#WalkAway" trademark. As non-exclusive licensees, Plaintiffs lack standing to pursue a claim for alleged trademark violations as a matter of law. Therefore, Plaintiffs' third cause of action should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

### A. Plaintiffs' Complaint.

There are three plaintiffs in this case—one individual and two entities. The individual is Brandon Straka, a conservative political figure who resides in Nebraska. (Compl. ¶ 1, ECF No. 1). The entities are the Walkaway Campaign Political Action Committee and the Walkaway Foundation (collectively, "Walkaway Entities"), both of which are headquartered in New York. (*Id.* at ¶ 193). Plaintiffs have sued nine defendants for alleged violations of state and federal law.

The gravamen of Plaintiffs' complaint is that Defendants—a "gang of cyberstalkers"—posted tweets about Straka that were personally and politically offensive. (*Id.* at ¶ 6). According to Plaintiffs, Defendants intended the tweets to "harass [Straka] into oblivion" and "excommunicate" him by tracking his moves online. (*Id.* at ¶¶ 8–9). For this alleged conduct, Plaintiffs have sued each of the nine defendants for defamation, civil conspiracy, and tortious interference.

Plaintiffs also allege that Defendants contacted supporters of the Walkaway Entities "falsely stating that Mr. Straka is a 'confessed felon' and 'convicted felon' who was using their money to 'organize violence.'" (*Id.* at ¶ 98). And they claim that Defendants created a website mimicking the tradename "#WalkAway" in a "coordinated effort to interfere with and destroy [Straka's] personal and business reputation[.]" (*Id.* at ¶ 6). These allegations purportedly support Plaintiffs' separately pled claims for trademark infringement, false designation of origin, tortious interference, defamation, and civil conspiracy.

### B. Additional facts embraced by the Complaint and subject to judicial notice.

Under Rule 12(b)(6), the Court may consider materials that are necessarily embraced by the pleadings, including documents whose contents are alleged even if not physically attached. *See Straka*, 2023 WL 5041614, at *4 (Bataillon, J.) "The Court may also take judicial notice of public records and may thus consider them on a motion to dismiss." *Id.* (internal quotations omitted).

The Complaint in this case explicitly references and relies on the "public record" from Mr. Straka's criminal case for his involvement in the January 6 attack

on the Capitol. (Compl. ¶¶ 14, 118, 181, ECF No. 1). The public records from Straka's underlying criminal case may, therefore, be considered at this stage of the proceedings because they are incorporated into the Complaint by reference and otherwise subject to judicial notice. (Ex. 2, Gutman Decl. Exs. B–E). The Court may also consider the contents of the websites <u>WalkAwayPac.com</u> and <u>https://walkawaypac.org/</u> which are referenced by the Complaint. (Compl. ¶¶ 33, 51–54, 177, 195, 198, 204, 217, 220, ECF No. 1). Finally, the Court may take judicial notice of other relevant public records, including the Douglas County Court docket related to Straka's 1998 DUI charge. *See* (Ex. 2, Gutman Decl. Ex. A).

## STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(2) – Subject Matter Jurisdiction

A plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). If the defendant controverts or denies jurisdiction, as is the case here, "the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id*. A court's exercise of jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and principles of federal due process. *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991).

### B.  Fed. R. Civ. P. 12(b)(3) – Venue

The plaintiff in a civil action has the burden of establishing facts to support its claim to venue. *Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963); *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12CV3128, 2012 WL 5187839, at \*6 (D. Neb.

Oct. 18, 2012). In determining whether venue is proper, all well-pled allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits. *Id.*

### C.  Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Richter v. Advance Auto Parts*, *Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). While the Court must accept as true all facts pleaded by the non-moving party, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

### <u>ARGUMENT</u>

### I.  The Court lacks personal jurisdiction over Miranda Dew.

The burden is on the plaintiff to plead and prove personal jurisdiction over out-of-state defendants. *Wells Dairy, Inc.,* 607 F.3d at 518. In this case, Plaintiffs' Complaint contains *one* allegation of purposeful availment—that Defendants "purposely directed their activities toward, and have harmed, and continue to harm Plaintiff, who is a resident of the State of Nebraska, by which conduct of Defendants are subject to the Court's specific jurisdiction under Nebraska law." (Compl. ¶ 26, ECF No. 1).

6

As an initial matter, it is undisputable that the Court lacks <u>general</u> personal jurisdiction over Miranda Dew. For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile," which is where the individual is "physically present and where they intend to make their home indefinitely." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011); *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). Here, Miranda Dew is domiciled in Texas, where she has lived for the past 15 years, meaning general jurisdiction does not exist in Nebraska. (Ex. 1, Dew Decl. ¶ 2–3).

Nor is there <u>specific</u> personal jurisdiction on the facts and circumstances alleged. In cases like this, which "sound in intentional tort," the Eighth Circuit evaluates specific jurisdiction by reference to the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984).

In *Calder*, the Supreme Court held that "personal jurisdiction can exist over a nonresident defendant who commits an intentional tort when its effect is felt primarily within the forum state." *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020). But the effects test is subject to two interrelated limitations. "First, the defendant's relationship with the forum state must arise out of contacts that the defendant himself created with the forum state." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021) (internal quotations omitted). Second, courts "look to the defendant's contacts with the forum state *itself*, not the defendant's contacts with persons who reside there." *Id*. (emphasis original). Ultimately, the "proper question" for personal jurisdiction "is not where the plaintiff experienced a

7

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

As noted above, Plaintiffs' only jurisdictional allegation against Miranda Dew is that she "purposely directed [her] activities" toward Straka "who is a resident of the State of Nebraska." (Compl. ¶ 26, ECF No. 1). But even accepting this allegation as true, it is insufficient as a matter of law to establish specific jurisdiction in this District. There are simply no allegations that Dew, in allegedly making statements about Straka online, had any contacts or connections with the forum state itself, which is the focus of the jurisdictional inquiry. Stated another way, there is no specific personal jurisdiction where, as here, "the only connection between the defendants and the forum state is the plaintiff himself." *Pederson*, 951 F.3d at 980.

This case is similar to *Johnson v. Arden*, where the Eighth Circuit affirmed a district court's dismissal for lack of personal jurisdiction. 614 F.3d 785 (8th Cir. 2010). The plaintiffs in *Johnson* were a company and its owners who operated a cat breeding business out of Missouri. *Id*. at 788. They sued a Colorado resident who had previously purchased cats on the plaintiffs' behalf, at times delivering the cats directly to Missouri. *Id*. Sometime later, the defendants allegedly posted defamatory statements about the plaintiffs' business on an online complaint board, describing it as a "kitten mill in Unionville, Missouri," that sells "infected cats." *Id*. at 796.

Although the defendants in *Johnson* specifically identified the location of the plaintiffs' business in their postings, the Eighth Circuit dismissed the case—which was originally filed in Missouri—for lack of personal jurisdiction. Dismissal was

proper, the Court held, because the allegedly defamatory statements were aimed at the business owners themselves, not the State of Missouri. "[T]he inclusion of 'Missouri' in the posting was incidental and not performed for the very purpose of having their consequences felt in Missouri," the Court reasoned. *Id*. at 796.

*Johnson* and its progeny make clear that, absent additional contacts between the defendants and the forum state, mere effects felt in the forum state are insufficient to confer personal jurisdiction. *Id*. at 797; *see also Pederson*, 951 F.3d at 981 (holding hundreds of phone calls received by persons at the forum state without evidence that the defendant was actually targeting the forum state); *Morningside Church, Inc*., 9 F.4th at 620 (holding handwritten letters and phone calls were insufficient to confer jurisdiction because the communications were "directed at Missouri" simply because the plaintiffs lived there). In other words, making online comments about someone who happens to live in Nebraska, or Iowa, or Missouri is insufficient itself to confer personal jurisdiction in those states.

In this case, Straka filed suit in Nebraska simply because he is a resident of this state and allegedly felt harm here. But there are no allegations to suggest that Miranda Dew, in allegedly making defamatory statements about Straka or the WalkAway Entities, purposefully availed herself of the privileges and benefits of Nebraska. Like *Johnson*, Plaintiffs' allegations in this case "fail[] to show that [Dew] uniquely or expressly aimed her statements at [Nebraska]." *Id*. at 796.

In sum, the Court lacks <u>general</u> personal jurisdiction over Dew because she is domiciled in Texas, where she has lived for the past 15 years. (Ex. 1, Dew Decl. ¶ 2–

3). It lacks <u>specific</u> personal jurisdiction because Plaintiffs' allegations, accepted as true, do not establish *any* contacts between Dew and the forum state itself. For these reasons, the Complaint should be dismissed against Dew for lack of personal jurisdiction. Dew's motion to dismiss should be granted.

## II.   Venue is not proper in Nebraska.

Even if personal jurisdiction was proper, dismissal is still warranted for lack of venue, which is governed by 28 U.S.C. § 1391. That statute provides that a civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction. § 1391(b). As discussed below, none of these subsections apply to this District, so Plaintiffs' Complaint should be dismissed.

**28 U.S.C. § 1391(b)(1)**: Venue is proper in any district in which any defendant resides, *if all defendants are residents of the State in which the district is located*. 28 U.S.C. § 1391(b)(1). This subsection is inapplicable here because not all defendants reside in Nebraska—one defendant resides in Texas (Dew), and another resides in New York (Clement). (Compl. ¶ 17, ECF No. 1; Ex. 1, Dew Decl. ¶¶ 2, 3). Accordingly, venue is improper under 28 U.S.C. § 1391(b)(1).

**28 U.S.C. § 1391(b)(2)**: Venue also exists in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." §

1391(b)(2). In analyzing this factor, courts look to the "relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state." *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014). Once a defendant raises the issue of proper venue, the plaintiff bears the burden of showing that venue is proper. *Gridiron Mgmt. Grp*, 2012 WL 5187839, at *6.

In this case, venue is improper under § 1391(b)(2) because none of the events giving rise to Plaintiffs' claims occurred in Nebraska. Indeed, the only allegation connecting this case to Nebraska is Brandon Straka's residency, which is irrelevant to the Court's analysis. *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (rejecting plaintiff's claim that sufficient venue lies in the district just because it was where he was residing when the alleged acts occurred). Because Plaintiffs have failed to allege that a substantial part of the events or omissions giving rise to the claims occurred in Nebraska, venue is improper under § 1391(b)(2).

**28 U.S.C. § 1391(b)(3)**: Section 1391(b)(3) is a catch all provision that applies only if there is no judicial district where venue would be proper. When this is the case, venue is proper in any judicial district where "any defendant is subject to the court's personal jurisdiction." § 1391(b)(3).

The catch all provision does not apply here because other jurisdictions may exist where venue would be proper. *Gridiron Mgmt. Grp*, 2012 WL 5187839, at *6 (burden is on plaintiff to establish venue). Further, Plaintiffs have not shown that any defendant is subject to personal jurisdiction in this District, which is required

under § 1391(b)(3). Accordingly, venue is improper in Nebraska under § 1391(b)(3), and Plaintiffs' Complaint should be dismissed under Fed. R. Civ. P. 12(b)(3).

## III. Plaintiffs have failed to state a claim upon which relief may be granted.

Plaintiffs' Complaint includes seven separately pled claims for relief under state and federal law. For the reasons discussed below, all of the claims fail as a matter of law as alleged against Miranda Dew. Thus, to the extent the Court reaches the merits, Plaintiffs' Complaint should be dismissed, in its entirety, under Rule 12(b)(6). Plaintiffs' third cause of action should further be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

### A. Plaintiffs have not satisfied basic pleading standards.

Plaintiffs' state and federal claims are not supported by concrete factual allegations and fail to satisfy even the most basic pleading standards. Instead of alleging specific conduct against each of the nine defendants, Plaintiffs simply state that all "Defendants" are responsible for the purported wrongs alleged in the Complaint. However, such "shotgun-style allegations of misconduct" are insufficient to state a claim because they do not inform "any particular defendant of the specific claims against them." *Quintero Cmty. Ass'n Inc. v. FDIC*, 792 F.3d 1002, 1010 (8th Cir. 2015); *see Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 3009115, at *6 (D. Neb. June 15, 2018); *Harrington v. Hall Cnty. Bd. of Supervisors*, No. 4:15-CV-3052, 2016 WL 1274534, at *5 (D. Neb. Mar. 31, 2016). For this reason alone, Plaintiffs' entire Complaint should be dismissed. *See Harrington*, 2016 WL 1274534, at *5.

12

**B. Plaintiffs have not stated a viable claim under the Lanham Act.**

Plaintiffs' Complaint includes two separately pled federal claims for unfair competition: Count III: Trademark Infringement (15 U.S.C. § 1114), and Count IV: False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a)). These claims, while separately pled, consist of the same elements and are governed by the same analysis. *See Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 397 n.1 (8th Cir. 1987); *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996); *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 793–94 (8th Cir. 1996). Accordingly, with the exception of standing, Dew analyzes these two claims together.

> ### i. *Plaintiffs lack standing to bring a trademark infringement claim.*

Plaintiffs' third cause of action alleges trademark infringement under the Lanham Act, 15 U.S.C. § 1114. Specifically, Plaintiffs allege that Defendants violated federal law by using the trademark "#WALKAWAY" in a manner "likely to cause confusion and mistake[.]" (Compl. ¶ 198, ECF No. 1). Because Plaintiffs lack standing to bring this claim, the Court should dismiss it under Rule 12(b)(1).

The Lanham Act requires that the "registrant" of the trademark bring suit for infringement. 15 U.S.C. § 1114(1). The Act defines a "registrant" to include "the legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127. "Courts have interpreted the Act to mean that only the following entities or individuals have standing to bring suit to bring a trademark infringement action: (1) the owner of the mark, (2) the person or entity to whom the owner of the mark has completely assigned all rights to the mark, or (3) the exclusive licensee of

13

the mark who has either been granted the explicit contractual right to enforce the mark and sue on the owner's behalf, or else is not restricted by virtue of any term in the license from fully enforcing the mark in the owner's place." *Zetor N. Am., Inc. v. Rozeboom*, No. 3:15-CV-03035, 2018 WL 3865411, at *5 (W.D. Ark. Aug. 14, 2018).

Thus, while an *exclusive* licensee of a trademark may have standing to sue under the Lanham Act, a *non-exclusive* licensee does not. *See Rozeboom*, 2018 WL 3865411, at *5; *Experian Marketing Solutions, Inc. v. U.S. Data Corp.*, No. 8:09CV24, 2009 WL 2902957, at 3–4 (D. Neb. 2009). This is because a non-exclusive licensee does not have sole ownership or control over the mark, and thus does not fall within the definition of "registrant" in 15 U.S.C. § 1114(1). *See Fin. Inv. Co. (Bermuda) v. Geberit AG*, 165 F.3d 526, 531 (7th Cir. 1998).

Here, Plaintiffs affirmatively allege that the "#WALKAWAY" trademark is "duly licensed to *Plaintiffs*." (Compl. ¶ 193, ECF No. 1) (emphasis added). Accepting this allegation as true, each of the three plaintiffs—Brandon Straka, WalkAway Campaign PAC, and WalkAway Foundation—holds a non-exclusive license to the #WALKAWAY trademark. Because Plaintiffs are, by their own admission, non-exclusive licensees of the subject trademark, they lack standing to sue for infringement under § 1114. The Plaintiffs' third cause of action for trademark infringement should therefore be dismissed.

### ii. *Plaintiffs have not adequately pled use of the mark in commerce.*

Causes of action three and four also fail because Plaintiffs have not plausibly alleged that Dew—or any other Defendant—used the mark in commerce.

"Each provision [of the Lanham Act] requires, as a prerequisite to finding liability, that the defendant 'use in commerce' the protected mark or a colorable imitation thereof." *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2003); *see* 15 U.S.C. §§ 1114(1)(a), 1125(a)(1). Under the Lanham Act, "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. For goods, use in commerce occurs when a mark "is placed in any manner on the goods," and "the goods are sold or transported in commerce." *Id*. For services, use in commerce occurs when a mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id*.

To state a viable claim for trademark infringement, 'use in commerce' must be pled with "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678. Rather, an allegation of use in commerce has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant used the goods in commerce. *See Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012).

Other than conclusory buzzwords, Plaintiffs' Complaint does not contain any factual allegations *at all* regarding Dew's alleged use of the trademark 'in commerce.' This is because the allegedly infringing website—www.WalkAwayPac.com—is completely noncommercial, existing instead as a critical commentary site. A review of the website, which is embraced by the pleadings, shows that the creator(s) designed

15

the website to call attention to Straka and the WalkAway Entities, as opposed to raise money or sell goods or services. Because there is no allegation of commercial use, Plaintiffs' third and fourth causes of action should be dismissed.

### iii.   Plaintiffs failed to plausibly allege likelihood of confusion.

To properly state a claim for trademark infringement, a plaintiff must also allege sufficient facts that a defendant's use of a mark is likely to cause confusion. If a plaintiff "fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6)." *Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 n.2 (2023).

As noted above, Plaintiffs allege that the Defendants created and used a website with the intent to confuse the public. (Compl. ¶ 198, ECF No. 1). But the Complaint does not detail *how* the website is likely to confuse a reasonably prudent customer. Nor could it—a review of the two websites refutes any possibility of confusion. Indeed, the allegedly infringing website is titled "The #WalkAway Buster" and includes the phrase "The #WalkAway Con-Man Stop the Grift." The website directly criticizes Straka and encourages the public to investigate the WalkAway Entities' tax-exempt status. Simply put, nothing in the allegedly infringing website— which is directly embraced by the pleadings—could plausibly be interpreted as intentionally misleading or confusing.

Plaintiffs want it both ways. On the one hand, they allege trademark infringement based on purported similarities between the two websites. On the other, they allege state law defamation, claiming the allegedly infringing website includes false and defamatory content criticizing Straka and his entities. Both cannot be true.

16

In sum, there are no allegations in the Complaint to plausibly allege likelihood of confusion. The subject website has a different title and readily communicates to viewers that it is not associated with Plaintiffs. For this reason, and the reasons discussed above, Plaintiffs' trademark infringement claims (causes of action three and four) should be dismissed under Fed. R. Civ. P. 12(b)(6).

**D. Plaintiffs have not stated any viable state law claims.**

Plaintiffs' first, second, sixth, and seventh causes of action arise under state law. The Court can—and should—decline to exercise supplemental jurisdiction over these claims because Plaintiffs have failed to state a viable federal claim. *Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.*, 758 F.3d 1038, 1045 (8th Cir. 2014). To the extent the Court retains supplemental jurisdiction, however, dismissal is warranted under Fed. R. Civ. P. 12(b)(6). Dew's motion to dismiss should be granted.

> *i.* ***Plaintiffs have failed to state a claim for false designation of origin or unfair competition under Nebraska law.***

In addition to their federal unfair competition claims, Plaintiffs' sixth cause of action alleges false designation of origin and unfair competition under Nebraska law. This claim is governed by the same analysis as Plaintiffs' federal claims, *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 397 n.1 (8th Cir. 1987), and has a comparable requirement of use in commerce, Neb Rev. Stat. § 87-302 (applying where a defendant takes certain actions "in the course of his or her business, vocation, or occupation"). Accordingly, for the same reasons addressed above, Plaintiffs' sixth cause of action should be dismissed.

### ii. Plaintiffs have failed to state a claim for defamation.

Plaintiffs' second cause of action is for state law defamation. To support this claim, Plaintiffs attach hundreds of tweets to their Complaint—almost none of which are attributable to Dew. The only tweets purportedly posted by Dew are on pages 5, 6, 12–19, 337–40, 342, 344–45, and 347 of Exhibit A. (Compl. Ex. A, ECF No. 1-1). In addition to the tweets, Plaintiffs also contend that Dew called Straka a "criminal, a racist, homophobic and transphobic, anti-Semitic, an abuser, a fraudster, financially insolvent, and psychologically disturbed … [and that his] business is 'pro-Holocaust.'" (Compl. ¶ 38, ECF No. 1).

Plaintiffs' defamation claim fails for two separate and independent reasons. First, the claim is premised on alleged statements that fall outside of Nebraska's one-year statute of limitations for defamation claims. Second, the tweets, even assuming they were within the statute of limitations, are not defamatory.

**Statute of Limitations**: Defamation claims in Nebraska are subject to a one-year statute of limitations. *Tennyson v. Werthman*, 167 Neb. 208, 210 (1958). A statute of limitations defense is properly considered on a motion to dismiss when the face of the complaint shows "that the cause of action is time barred[.]" *Bonness v. Armitage*, 305 Neb. 747, 755, 942 N.W.2d 238, 245 (2020). In this case, most of the allegedly defamatory tweets associated with Dew were made before January 19, 2023, and therefore beyond the limitations period for defamation.

Specifically, the tweets displayed on pages 5, 337–340, 345, and 347 of Exhibit A to the Plaintiffs' Complaint all bare timestamps placing the tweets well outside of

18

the limitations period. (Compl. Ex. A at 5, 337–340, 345–47, ECF No. 1-1). The remaining tweets either lack a timestamp or appear to be dated after January 19, 2023. (*Id*. at 11–18, 342, 344). Accordingly, these are the only tweets that are even *potentially* actionable under Nebraska law. Thus, with limited exceptions, Plaintiffs' defamation claim is time barred.

**Not Defamatory**: A defamation claim in Nebraska requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Palmtag v. Republican Party of Nebraska*, 315 Neb. 679, 692–693 (2024). Because Brandon Straka is an admitted public figure, he must also prove actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 267 (1964). Here, Plaintiffs' claim fails at steps one and four.

The threshold question in a defamation suit is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion. *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 940 (2015). Falsity is an element of a plaintiff's defamation claim and is his burden under the First Amendment. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). To satisfy material falsity, a plaintiff must prove that the "gist or sting" of the alleged defamation would have a different effect on the mind of the audience than the literal truth; "[w]hen the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no

19

legal harm has been done." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991); *Tannerite Sports, LLC v. NBC Universal News Group, a division of NBC Universal Media, LLC*, 864 F.3d 236, 242–43 (2d Cir. 2017) (citation omitted).

None of Dew's alleged tweets in this case are materially false. For example, a tweet dated October 7, 2021, states "I only know of his DWI arrest in Omaha, NE around 1998." (Ex. A 338, ECF No. 1-1). This is a true statement because, in 1998, Straka was charged with a DUI. (Ex. 2, Gutman Decl. Ex. A). Thus, Dew's tweet is not materially false because, as she correctly states in the tweet, Straka was arrested for driving while intoxicated.

In another string of tweets, Dew allegedly states, "[Straka] gave up other Jan 6 defendants and is currently fighting to keep that classified," and "admit[ed] in court, under oath, to encouraging the attacks on the Capitol Police[.]" (Compl. Ex. A at 344, ECF No. 1-1). But this, too, is true. On September 14, 2021, Straka signed a plea agreement where he pled guilty to Engaging in Disorderly and Disruptive Conduct in the Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). (Ex. 2, Gutman Decl. Ex. C). In the statement of offenses included in the plea agreement, Straka agreed the government would have been able to prove beyond a reasonable doubt that he

> engaged in disruptive conduct by participating, along with others, in yelling 'go, go, go' to encourage others to enter the U.S. Capitol while the U.S. Capitol Police were making their best efforts to prevent people from doing so… He recorded a video of what was happening, and in the video, he chimed in with the crowd, saying 'take it, take it.'

(*Id.* ¶ 9). Further, publicly available court records detail the "assistance provided to the government by defendant Brandon Straka." (Ex. 2, Gutman Decl. Ex. E).

The rest of Dew's alleged tweets are instances of opinion, and thus not actionable for defamation. To distinguish fact from opinion in a defamation claim, courts apply a totality of the circumstances test. *Steinhausen* 289 Neb. at 940. Relevant factors include (1) whether the general tenor of the entire work negates the impression that the defendant asserted an objective fact, (2) whether the defendant used figurative or hyperbolic language, and (3) whether the statement is susceptible of being proved true or false. *Id.* at 940. In addition to the content of the communication, a court looks to the knowledge, understanding, and reasonable expectations of the audience to whom the communication was directed, taking cues from the broader setting in which the statement appears. *Id.* at 941. Words, particularly pejorative ones, often have both a literal and figurative meaning. *Id.*

Whether the language is hyperbolic is relevant to distinguishing fact from opinion. *Id.* Rhetorical hyperbole—language that, in context was obviously understood as an exaggeration, rather than a statement of literal fact—is not actionable. *Id.* Nebraska courts' understanding of rhetorical hyperbole includes abusive epithets, vulgarities, and profanities. *Id.* Generally, name calling falls under the category of rhetorical hyperbole. *Id.* Courts have held that "statements potentially referring to the plaintiff's mental health, such as raving maniac; pitiable lunatics; wacko; nut job; and hysterical; crazy; and crank; were statements of opinion" and thus not actionable. *Id.* (internal quotations omitted).

Most tweets attributed to Dew are instances of opinion. For example, an undated tweet allegedly attributed to Dew states, "[h]is grift has been taken over by pro-Holocaust, homophobic immigrants and he's going to prison." (Compl. Ex. A at 344, ECF No. 1-1). In another tweet from December 31, 2021, Dew allegedly states, "[h]e's a narcissistic, entitled, grifting, self-involved, condescending (while incorrect) small man with a chip." (Compl. Ex. A at 345, ECF No. 1-1).

The term "grifter" is not defamatory per se and not defamatory as a matter of law. *Tate v. Bradley*, 837 F.2d 206, 208 (5th Cir. 1988); *Russo v. Conde Nast Publications*, 806 F. Supp. 603, 609 (E.D. La. 1992) (the term "grifter" is not defamatory per se, and such term "while unflattering is not defamatory as a matter of law"); *Broughty v. Bouzy*, No. CV226458SDWJRA, 2023 WL 5013654 (D.N.J. Aug. 7, 2023) ("defendant's tweets describing plaintiff as a 'grifter,' 'liar,' 'troll,' or participant in a 'smear campaign' are clearly opinions in the context in which they were stated."). The alleged use of the term "grifter" by Dew, therefore, is not defamatory, nor is the other words and phrases in these tweets.

The forum in which these allegedly defamatory tweets were posted also indicates that they are opinions. Twitter is a public forum where "a reasonable reader will expect to find many more opinions than facts." *Broughty*, 2023 WL 5013654 at *5; *see also Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015) ("New York courts have consistently protected statements made in online forums as statements of opinion rather than fact.") (collecting cases)); *Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 12–13 (N.Y. App. Div. 1st Dep't 2015)

(noting that a tweet does not give the same impression of truth as a newspaper article); *Brahms v. Carver*, 33 F. Supp. 3d 192, 199 (E.D.N.Y. 2014) (noting, in concluding that an allegedly defamatory statement is nonactionable opinion, that it "was made on an internet forum where people typically solicit and express opinions, generally using pseudonyms"); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012) (explaining that statements published in "editorial formats…create the 'common expectation' that the communication would 'represent the viewpoint of [its] author [ ] and…contain considerable hyperbole, speculation, diversified forms of expression and opinion.'").

Here, all the instances of allegedly defamatory statements were posted on Twitter. Due to Twitter's online public forum, the tweets allegedly posted by Dew are overwhelmingly her opinion—other than those which are true. Because they are instances of opinion, they are not actionable as defamation.

Plaintiffs have also failed to allege damages, which is the fourth required element in a defamation claim. Under Nebraska law, Plaintiffs must either allege actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Palmtag*, 315 Neb. at 692–93, 999 N.W.2d at 585.[1] Special damages must be specifically stated to be claimed. Fed. R. Civ. P. 9(g).

---

[1] Nebraska law also requires that defamation Plaintiffs demand retraction and correction of allegedly defamatory statements within twenty days. Neb. Rev. Stat. § 25-840.01. If defamation plaintiffs fail to demand retraction, they are barred from all damages except those "plaintiff alleges and proves were suffered in respect to his or her property, business, trade, profession, or occupation as the direct and proximate result of the defendant's publication" unless they prove the publication was prompted by actual malice. *Id.* The Complaint does not state that Plaintiffs demanded Dew retract any of the alleged defamatory statements at any time.

Plaintiffs have not pled Dew's alleged tweets caused damages aside from a generic and conclusory allegation that Plaintiffs "suffered special damages, presumed damages and actual damages, including, but not limited to, loss of income and injury to their business, injury to their reputation, costs and other out-of-pocket expenses." (Compl. ¶ 190, ECF No. 1). Therefore, they can only satisfy the fourth element of defamation at this stage if the tweets are actionable irrespective of special harm—or defamatory *per se. Palmtag*, 315 Neb. at 692–93, 999 N.W.2d at 585.

In Nebraska, defamation *per se* can be brought if the words are actionable in themselves because they (1) *falsely* impute the commission of a crime involving moral turpitude, (2) an infectious disease, or (3) unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. *Matheson v. Stork*, 239 Neb. 547, 553 (1991) (emphasis added). Plaintiffs have alleged generally that the various statements constitute defamation *per se* because they "accuse and impute to Mr. Straka (a) one or more crimes, including insurrection, and (b) an unfitness to perform the duties of an office or employment for profit, including lack of ethics, lack of integrity, lack of veracity, lying, cheating and stealing." (Compl. ¶ 175, ECF No. 1).

But as discussed above, any alleged statements that Straka engaged in an "insurrection" are not false—therefore, they do not "falsely impute" Straka with a crime. *Cf. Straka*, No. 8:22CV434, 2023 WL 5041614 (D. Neb. Aug. 8, 2023) (statements that Straka "stormed the capitol" not actionable as defamation). Other statements allegedly made by Dew, such as referring to Straka as a "grifter" and

similar critical remarks are also not defamatory *per se*. *E.g.*, *Tate*, 837 F.2d at 208; *Russo*, 806 F. Supp. at 609. For these reasons, and the reasons discussed above, Dew's tweets are not actionable in defamation, and Plaintiffs' second cause of action should therefore be dismissed.

### iii.   Plaintiffs have failed to state a claim for tortious interference.

Plaintiffs' Complaint includes a separately pled claim for tortious interference. It is unclear, however, if this claim is brought against Dew, as there are no factual allegations to support her alleged involvement. While Plaintiffs do plead facts against other defendants—including @StonePGH, @MikeClover7, and @BrawndoSnitchka—there is nothing to suggest any involvement by Dew. (Compl. ¶¶ 76–82, ECF No. 1).

Assuming the claim applies to Dew, it fails as a matter of law. There are simply no factual allegations to plausibly conclude that Dew, as one of the Defendants, caused "numerous vendors to stop doing business with Mr. Straka and his organization," as Plaintiffs' allege in the Complaint. (Compl. ¶ 63, ECF No. 1).

Nor does the Complaint sufficiently allege a business expectancy, or knowledge of a business expectancy, as required under Nebraska law. *Denali Real Estate, LLC v. Denali Custom Builders, Inc.,* 302 Neb. 984, 1004 (2019). Instead, the Complaint speculatively asserts that "Defendants research virtually every vendor that Mr. Straka and #Walkaway contract to do business with…" and know about the "contracts and expectations" from doing "research and review of available information on the Internet." (Compl. ¶¶ 55, 156, ECF No. 1). The conclusory nature of these

allegations makes it difficult, if not impossible, to know what relationships or expectancies are even at issue.

Even if the first two elements were properly pled, which they are not, the claim would still fail at step three, which requires the interference to be unjustified. An intentional *but justified* act of interference will not subject the interferer to liability. *Matheson v. Stork*, 239 Neb. 547, 551, 477 N.W.2d 156, 160 (1991).

Despite the Complaint's insistence on the "limitless malice" possessed by defendants, malice is not a controlling factor in tortious interference liability. (Compl. § e, ECF No. 1); *Huff,* 258 Neb. at 829*; Recio,* 278 Neb. at 425. The Nebraska Supreme Court has been very clear on this point, holding repeatedly that "[w]hen truthful information provides the basis for a termination of a business relationship, the resulting liability, if any, should rest on the party who made an informed choice to terminate the relationship—not the party who provided the facts upon which that decision was based." *Thompson v. Johnson*, 299 Neb. 819, 830 (2018).

This result is also consistent with broader First Amendment implications, including the right to free expression and the consumer's right to boycott. The U.S. Supreme Court has held that "the right to petition is of such importance that it is not an improper interference [under state tort law] even when exercised by way of a boycott." *NAACP v. Claiborne Hardware Co.,* 485 U.S. 886 (1982) *quoting Missouri v. National Organization for Women Inc.,* 620 F.2d 1301, 1317 (CA81980), *cert denied* 449 U.S. 842. Thus, even assuming the allegations in the Complaint as true, they do

not give rise to an actionable claim for tortious interference. For this reason, and the reasons discussed above, the tortious interference claim fails.

     *iv.*    ***Plaintiffs have failed to state a claim for civil conspiracy.***

Plaintiffs' civil conspiracy claim fails for many of the reasons set forth above, including the absence of any factual allegations against Miranda Dew. Further, a civil conspiracy cannot exist without an underlying tort, and, as previously discussed, Plaintiffs have failed to state a claim for any of the torts alleged. *Salem Grain Co. Inc. v. Consolidated Grain and Barge Co,* 297 Neb. 682 (2017). Accordingly, the Court should dismiss the civil conspiracy claim under Rule 12(b)(6).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Miranda Dew respectfully requests an Order dismissing the Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction, personal jurisdiction, venue, and failure to state a claim upon relief may be granted. Miranda Dew's motion to dismiss should be granted.

Dated this 18th day of March, 2024.

Respectfully submitted,

MIRANDA DEW, Defendant

BY:    /s/Daniel J. Gutman
        Daniel J. Gutman, #26039
        Sydney L. Hayes, #27051
        University of Nebraska College of Law
        First Amendment Clinic
        Schmid Clinic Building
        P.O. Box 830902
        Lincoln, NE 68583-0902
        Dgutman2@unl.edu
        Shayes6@unl.edu
        ATTORNEYS FOR DEFENDANT
        MIRANDA DEW

## CERTIFICATE OF COMPLIANCE

I, Daniel J. Gutman, hereby certify that the foregoing complies with Nebraska Local Rule 7.1(d)(1)(B). I certify this Memorandum contains 7,253 words, which includes the Memorandum's case caption, signature block, and certificate of compliance.

/s/ Daniel J. Gutman _____

28