IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRANDON STRAKA, WALKAWAY CAMPAIGN PAC, and WALKAWAY FOUNDATION, | ) ) ) | CASE NO. 8:24-CV-00024-JFB-SMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **BRIEF IN SUPPORT OF MOTION TO** |
| | ) | **DISMISS ON BEHALF OF DEFENDANT** |
| DAVID S. CLEMENT, | ) | **DAVID S. CLEMENT** |
| @BRAWNDOSNITCHKA, | ) | |
| @CHICHIVISION18, | ) | |
| @MIKECLOVER7, @STONEPGH, | ) | |
| THATSQUITEAWALK, | ) | |
| @HIGHENANONTOO, @TOOLEJK | ) | |
| *and* @ZIBTARA *a/k/a* MIRANDA DEW | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Defendant David S. Clement and submits this Memorandum Brief in support of his Motion to Dismiss.

**INTRODUCTION**

Plaintiffs—two organizations and one individual— filed the instant lawsuit on January 19, 2024. The individual, Brandon Straka, is a conservative political figure residing in Nebraska. (Compl. ¶ 1, ECF No. 1).  Plaintiff Straka is no stranger to filing baseless lawsuits against people who speak out about Mr. Straka and his involvement in the January 6, 2021, attack on the United States Capitol; his suit against NBC Universal and two news anchors, wherein he alleged claims of defamation, was dismissed by this Court on the pleadings, finding that

1

Plaintiff Straka failed to state a claim upon which relief could be granted. *Straka v. NBC Universal Media, LLC*, No. 8:22CV434, 2023 U.S. Dist. LEXIS 137603 (D. Neb. Aug. 8, 2023). The organizations involved are the Walkaway Campaign Political Action Committee and the Walkaway Foundation, (collectively, "Walkaway Entities"), both of which are headquartered in New York. (Compl. ¶ 193, ECF No. 1). The lawsuit targets nine defendants, alleging violations of both state and federal laws.

The core allegation of the plaintiffs is that the defendants, described as a "gang of cyberstalkers," published tweets targeting Straka that were deemed personally and politically offensive. (Compl. ¶ 6, ECF No. 1). These tweets were allegedly intended by Defendants to harass Straka and undermine his online presence. Plaintiffs also allege that Defendants contacted Plaintiffs' supporters, made a website mimicking the tradename #WalkAway, and engaged in a "coordinated effort to interfere with and destroy [Straka's] personal and business reputation[.]" (Compl. ¶¶ 6, 98, ECF No. 1). The plaintiffs have filed claims against each of the nine defendants for defamation, civil conspiracy, and tortious interference based on these actions.

Where materials are embraced by the pleadings, even if not physically attached, the Court may consider such materials under Rule 12(b)(6). *See Straka*, 2023 WL 5041614, at *4 (Bataillon, J.) "The Court may also take judicial notice of public records and may thus consider them on a motion to dismiss." *Id*. (internal quotations omitted).

The Complaint in this case explicitly references and relies upon numerous items not physically attached to the Complaint. Specifically, Plaintiffs and the Complaint rely upon the

"public record" from Mr. Straka's criminal case for his involvement in the January 6 attack on the Capitol. (Compl. ¶¶ 14, 118, 181, ECF No. 1). The public records from Straka's underlying criminal case may, therefore, be considered at this stage of the proceedings because they are incorporated into the Complaint by reference and otherwise subject to judicial notice. (Ex. 2, Stryker Viehman Dec. Exs. A-D). The Court may also consider the contents of the websites WalkAwayPac.com and https://walkawaypac.org/ which are referenced by the Complaint. (Compl. ¶¶ 33, 51-54, 177, 195, 198, 204, 217, 220, ECF No. 1).

**STANDARD OF REVIEW**

A. Fed. R. Civ. P. 12(b)(2) – Subject Matter Jurisdiction

A plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). If the defendant controverts or denies jurisdiction, as Defendant Clement does here, "the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id*. A court's exercise of jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and principles of federal due process. *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991). The defendant(s)' knowledge of the plaintiff's residence in the forum state and alleged harm to the plaintiff in the forum state does not alone confer jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 279 (2014). "(T)he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*.

B. Fed. R. Civ. P. 12(b)(3) – Venue

The plaintiff in a civil action has the burden of establishing facts to support its claim to venue. *Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963); *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12CV3128, 2012 U.S. Dist. LEXIS 150020, at *16 (D. Neb. Oct. 18, 2012). In determining whether venue is proper, all well-pled allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits. *Id*. Once a defendant raises the issue of venue by motion, it is the plaintiff's burden to show venue is proper. *Id*. The court must focus on Defendant's alleged wrongful activity in deciding whether a substantial part of the events or omissions giving rise to the claims occurred in that district. *Id*. at 702.

C. Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). "This standard does not require detailed factual allegations, but it demands more than an unadorned accusation." *Harrington v. Hall Cnty. Bd. Of Supervisors*, No. 4:15-CV_3052, 2016 U.S. Dist. LEXIS 43541, *9 (D. Neb. March 31, 2016). While the Court must accept as true all facts pleaded by the nonmoving party, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible

4

claim for relief requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

**ARGUMENT**

I.     **The Court Lacks Personal Jurisdiction Over Defendant David S. Clement.**

Plaintiffs have failed to meet their burden to state sufficient facts in the complaint to support a reasonable inference that Defendant Clement can be subjected to jurisdiction in Nebraska. Where a defendant denies jurisdiction, "the plaintiff bears the burden of proving facts supporting jurisdiction." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

In evaluating whether jurisdiction is properly asserted over a nonresident defendant, the court "must determine that personal jurisdiction exists under the forum state's long-arm statute and that the exercise of personal jurisdiction is consistent with due process." *Id.*  Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 "has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution." *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12CV3128, 2012 U.S. Dist. LEXIS 150020 (D. Neb. Oct. 18, 2012).

Personal jurisdiction can be either specific or general, but Plaintiffs cannot establish either as to Defendant Clement.  With regard to general personal jurisdiction and an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile. . ." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011).

5

Domicile is where the individual is "physically present and where they intend to make their home indefinitely." *Yedell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990).  Defendant Clement is not and has never been domiciled in Nebraska. Rather, Defendant Clement is domiciled in New York, where he has lived for since 1993. (Ex. 1, Clement Dec. ¶¶ 2 & 3; Complaint ¶ 17, ECF No.1). Defendant Clement has no intention of leaving New York and intends to make his home in New York indefinitely. Thus, there is no general personal jurisdiction in Nebraska over Defendant Clement.

Specific jurisdiction is also lacking with regard to Defendant Clement based upon the allegations in the Complaint. Specific jurisdiction addresses "jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. . ." *Viasystems, Inc.*, 646 F.3d at 592.  Where intentional torts are involved, as here, the Eighth Circuit has applied the "effects test," which finds personal jurisdiction can exist over a nonresident defendant where the effect of the intentional tort is "'felt' primarily within the forum state." *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020). The effects test has two limitations: one, that the "relationship must arise out of contacts that the defendant has created with the forum state;" and, two, that the focus is the defendant's contacts and conduct within the forum state itself rather than the defendant's contacts with people who reside there. *Id.*  The proper inquiry when analyzing personal jurisdiction is not where the plaintiff experienced the alleged injury or effect. Rather, the proper inquiry is to "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Plaintiffs have made no substantive jurisdictional allegations against Defendant Clement. Plaintiffs' only jurisdictional allegation is that Defendant Clement, and other defendants, "purposely directed their activities toward and have harmed, and continue to harm, Plaintiff, who is a resident of the State of Nebraska, by which conduct Defendants are subject to the Court's specific jurisdiction under Nebraska law." (Compl. ¶ 26, ECF No. 1). Plaintiffs' focus on the location of Plaintiffs' harm is clearly improper as identified by the foregoing caselaw. Applying the relevant inquiry—looking at whether Defendant Clement's conduct connects him with Nebraska in a meaningful way—it is clear no specific jurisdiction exists. Defendant Clement does not have contacts with the State of Nebraska. (Ex. 1, Clement Dec. ¶¶ 4-6, 9-10). Defendant Clement does not conduct any business activity in the State of Nebraska, does not live in the State of Nebraska, has not visited the State of Nebraska in over fifteen years, does not own property in the State of Nebraska, does not have family in the State of Nebraska, and does not have any meaningful connection with the State of Nebraska. (Ex. 1, Clement Dec. ¶¶ 4-6, 9-10). The only connection between Defendant Clement and the State of Nebraska at any point relevant to the subject lawsuit is through Plaintiff. Where "the only connection between the defendants and the forum state is the plaintiff himself," there is no specific jurisdiction. *Pederson*, 951 F.3d at 950. Plaintiffs have failed to establish specific personal jurisdiction over Defendant Clement.

The case of *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010) is instructive here. In *Johnson*, Plaintiffs, who were Missouri residents and owners of a cat breeding business, filed suit against a Colorado resident whom they alleged posted allegedly defamatory statements on an online complaint board, specifically identifying the cat breeding business, its location, and describing it

7

as a "kitten mill" that sold "infected cats." *Id.* at 796. The Colorado resident previously did business with Plaintiffs including having purchased cats on the plaintiffs' behalf, having listed her own cats for sale on Plaintiffs' website, and having transported cats directly to Missouri. *Id.* at 788. The Eighth Circuit upheld the dismissal of Defendant for lack of personal jurisdiction after inquiring whether Defendant "purposefully directed" her postings and internet activities at the State of Missouri. *Id.* at 795. The Court applied the effects test and held that Defendant's posting was not uniquely or expressly aimed at Missouri, and she did not have sufficient contacts with the state to be subject to personal jurisdiction in Missouri. *Id.* at 797.

Defendant Clement's connections to Nebraska are not nearly as strong as the defendant in *Johnson* who had posted her cats for sale on a website for a Missouri business, who had been to Missouri to transport cats to Plaintiffs, who had specifically called out the business and its location, and who was found by the Eighth Circuit to still not have the minimum contacts to support specific personal jurisdiction.  Defendant Clement only tweeted about someone who lives in Nebraska. He did not direct or expressly aim his statements at Nebraska.  Plaintiffs' only jurisdictional assertion is that the defendants' have "directed their activities toward… Plaintiff, who is a resident of the State of Nebraska." (Compl. ¶ 26, ECF No. 1).  In other words, the activity was directed toward Plaintiff Straka himself, not the state of Nebraska, and the effect was felt by Plaintiff Straka in Nebraska. Courts have made clear that where a defendant lacks contacts with the forum, the mere effects having been felt in the forum state is insufficient to confer jurisdiction and the same result should be reached here.

Plaintiffs have failed to establish either specific or personal jurisdiction over Defendant Clement, who is a resident of New York, and who has not purposefully directed his activities toward Nebraska.  Plaintiffs fail to plead jurisdictional facts which would support personal or specific jurisdiction against Defendant Clement. Accordingly, Defendant Clement's Motion to Dismiss should be granted and the Complaint should be dismissed against Defendant Clement under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## II.     Venue Is Not Proper in Nebraska.

Like with personal jurisdiction, Plaintiffs have similarly failed to establish that venue is proper in Nebraska and accordingly, dismissal is warranted on venue grounds as well. Plaintiffs have asserted venue under 28 U.S.C. § 1391(b)(2) and (3). Section 1391 provides, in part:

> (b) Venue in general. A civil action may be brought in—
>
> > (1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> >
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Plaintiff has not specifically asserted venue under 28 U.S.C. § 1391(b)(1), but Defendant Clement will address each subsection in turn for sake of completeness. Venue is not proper under any subsection.

With regard to 28 U.S.C. § 1391(b)(1), this ground for venue is quickly disposed of as at least two of the defendants reside in different states. Defendant Clement resides in New York. (Ex. 1, Clement Dec. ¶2; Complaint ¶ 17, ECF No.1). Defendant Dew resides in Texas, according to her Declaration submitted in support of her Motion to Dismiss. (Dec. Miranda Dew, ¶2, ECF Doc. No. 21-1). Neither Defendant Dew nor Defendant Clement reside in the same state or in the state of Nebraska. Thus, venue is not appropriate under 28 U.S.C. § 1391(b)(1).

Turning to 28 U.S.C. § 1391(b)(2), venue still cannot be found in Nebraska as this subsection requires "a substantial part of the events or omissions giving rise to the claim" to have occurred in the venue or "a substantial part of property that is the subject of the action" to be situated in the venue. Similar to the analysis of personal jurisdiction, courts analyzing this factor look to "the relevant activities of the defendant in the forum state, not on the effect of the activities on the plaintiff in the forum state." *Steen v. Murray*, 770 F.3d 698 (8th Cir. 2014).  The burden is on plaintiff to show venue is proper once a defendant raises the issue of venue by motion. *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12CV3128, 2012 U.S. Dist. LEXIS 150020, *16 (D. Neb. Oct. 18, 2012). Both Defendants Dew and Clement have challenged venue, now making it Plaintiffs' burden to establish venue is proper. Plaintiffs will not be able to meet the burden under 28 U.S.C. § 1391(b)(2) because, as discussed previously with respect to jurisdiction, Defendant Clement has not had any relevant activities in the forum state of Nebraska. Plaintiffs have failed to plead any relevant activities of Defendant Clement in the forum state—again, Plaintiffs specifically pleaded that the effect of defendants' activities was felt in Nebraska by Plaintiff Straka, which is insufficient. (Compl. ¶ 26, ECF No. 1). Plaintiffs have not pleaded or alleged that any substantial part of the events or omissions giving rise to the alleged claims

occurred in Nebraska. Venue under 28 U.S.C. § 1391(b)(2) is therefore improper and Plaintiffs'

claims should be dismissed against Defendant Clement for lack of venue.

Finally, venue is also improper under 28 U.S.C. § 1391(b)(3). As discussed in *Gridiron*

*Mgmt. Grp., LLC*, subsection (3) applies only if there is no district in which the action may

otherwise have been brought. *Id.* at *17-18. The subsection is further limited in that the venue

selected under this subsection must be one where "any defendant is subject to the court's

personal jurisdiction." 28 U.S.C. § 1391(b)(3).  As there are other jurisdictions wherein venue

may be proper and Defendant Clement is not subject to personal jurisdiction in Nebraska,

Plaintiffs cannot establish venue under 28 U.S.C. § 1391(b)(3) and the Complaint should be

dismissed under Fed. R. Civ. P. 12(b)(3).

### III.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

Plaintiffs have presented six claims against all defendants named in the subject suit:

Count I—Tortious Interference; Count II—Defamation; Count III—Trademark Infringement- 15

U.S.C. § 1114; Count IV—False Designation of Origin and Unfair Competition- 15 U.S.C. §

1125(a); Count VI (sic)—False Designation of Origin and Unfair Competition- Nebraska Law;

Count VII (sic)—Civil Conspiracy/Contributory Infringement. For the reasons that follow, all of

Plaintiffs' claims fail as a matter of law as against Defendant Clement and dismissal of the

Complaint in its entirety is appropriate under Fed. R. Civ. P. 12(b)(6). Moreover, Plaintiffs'

cause of action for Trademark Infringement should be dismissed for lack of subject matter

jurisdiction under Fed. R. Civ. P. 12(b)(1).

11

## A. Plaintiffs fail to meet basic pleading standards such that dismissal of the Complaint is appropriate.

Federal Rule of Civil Procedure 8 sets forth the basic pleading requirements in federal court including, in part, that the pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)) and that "each allegation must be simple, concise, and direct" (Fed. R. Civ. P. 8(d)(1)). Nothing about Plaintiffs' Complaint is short, plain, simple, concise, or direct. Rather, the Complaint is a forty-one page, two hundred twenty-five paragraph document without any specific identification of the claims against each of the nine defendants or any specification which claims apply to which Plaintiff(s). Less than five percent of the two hundred twenty-five paragraphs (eleven out of the two hundred and twenty-five) identify Defendant Clement by name, and of those, one identifies Defendant Clement as a party and five also include allegations against multiple other defendants. Courts have repeatedly rejected pleadings which take such a broad, shotgun-style approach to alleging misconduct of defendants.  A Complaint "need not contain detailed factual allegations but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice." *Harrington v. Hall Cnty. Bd. Of Supervisors*, No. 4:15-CV-3052, 2016 U.S. Dist. LEXIS 43541, *9 (D. Neb. March 31, 2016).  In *Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 U.S. Dist. LEXIS 100643 (D. Neb. June 15, 2018), in granting the defendants' motions to dismiss for failure to state a claim, the Court held that the way in which Plaintiff's negligence claims were pled "[was] a problem" as the complaint "list[ed] 33 broadly stated charges against every defendant—making no effort to parse out which of the 69 defendant did what. . ." *Id.* at *18. The Court continued, noting that the purpose of the rules of pleading is to "give the

12

defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* By bringing the complaint in a "shotgun" style, the plaintiff failed to provide defendants fair notice of the grounds for the claims made against a particular defendant. *Id.* at *19. The Eighth Circuit Court of Appeals has similarly frowned upon such long-winded, non-specific complaints, writing, that it would not, without guidance, "mine a seventy-two page complaint searching for nuggets that might refute obvious pleading deficiencies." *Quintero Cmty Ass'n Inc. v. FDIC*, 792 F.3d 1002, 1009 (8th Cir. 2015). Mere "naked assertions, devoid of further factual enhancement" do not take claims from conceivable to probable." *Id.* Plaintiffs here ask this Court to do just what the Eighth Circuit said it would not—mine a long, non-specific complaint for nuggets to support their position. Under the rules of pleading and the foregoing caselaw, it is appropriate for this Court to reject Plaintiffs' invitation to mine and instead dismiss Plaintiffs' complaint for failing to state a claim upon which relief can be granted.

### B. Plaintiffs fail to state a viable claim under the Lanham Act.

Counts III and IV allege federal causes of action for Trademark Infringement (15 U.S.C. § 1114) and False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a)). Both causes of action consist of the same elements and are subject to the same analysis. *First State Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996); *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792-94 (8th Cir. 1996). Notably, Count VI of Plaintiffs' Complaint presents a state law claim for False Designation of Origin and Unfair Competition, which can also be analyzed under the same framework as the federal claims. *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 397 n.1 (8th Cir. 1987).

i.      **Plaintiffs lack standing to bring a trademark infringement claim.**

As a preliminary matter, Plaintiffs have failed to establish standing to bring their cause of action for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), and their claim for trademark infringement should be dismissed under Fed. R. Civ. P. 12 (b)(1).  Plaintiffs allege Defendants (generally, without specific allegations as to which defendants or how), violated federal trademark law by using the #WALKAWAY trademark in commerce in a manner that is likely to cause confusion and create a false impression that the content on www.walkawaypack.com is authorized by Plaintiffs. (Compl. ¶¶ 195-198, ECF No. 1). However, to be able to bring such a claim, the Lanham Act requires a "registrant" of the trademark to bring the claim, which does not appear to be the case here. Plaintiffs pleaded a general statement that the trademark at issue has been "duly licensed to Plaintiffs *for use* in connection with their activities in connection with the #Walkaway Campaign." (Compl. ¶ 193, ECF No.1)(emphasis added).

Both the Lanham Act itself and federal case law have made clear that there is a difference between license to use a trademark and license to pursue a claim for trademark infringement. "Registrant" has been defined under the Lanham Act as including "the legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127, which courts have interpreted to mean that,

> only the following entities or individuals have standing to bring suit in a trademark infringement action: (1) the owner of the mark, (2) the person or entity to whom the owner of the mark has completely assigned all rights to the mark, or (3) the exclusive licensee of the mark who has either been granted the explicit contractual right to enforce the mark and sue on the owner's behalf or else is not

restricted by virtue of any term in the license from fully enforcing the mark in the owner's place.

*Zetor N. Am., Inc. v. Rozeboom*, No. 3:15-CV-03035, 2018 U.S. Dist. LEXIS 137042, *14-15 (W.D. Ark. Aug. 14, 2018). Some courts have taken it even further finding that an exclusive licensee would not have standing to sue for infringement unless its license was "'truly exclusive,' meaning that it excluded even the licensor from using the mark and, thus, was more analogous to a complete assignment of the rights of the mark," *Id.* at *15, Fn.1. Plaintiffs have not alleged they are the owners of the mark. In fact, Plaintiffs alleged that the ownership of the trademark belongs to WalkAway Campaign LLC. (Compl. ¶ 193, ECF No. 1). Plaintiffs therefore cannot find standing under the first category of individuals with standing. Similarly, Plaintiffs have not pleaded or presented evidence that they collectively or individually have been completely assigned all rights to the mark by WalkAway Campaign LLC and cannot establish standing under the second category. Plaintiffs have only alleged license for "use" which is not tantamount to an assignment. (Compl. ¶ 193, ECF No. 1). Finally, Plaintiffs have failed to establish standing under the third category of individuals or entities with standing because they are not exclusive licensees of the mark. Plaintiffs' pleadings reveal Plaintiffs to be non-exclusive licensees with respect to the subject trademark; license to "use" the trademark does not provide sole ownership or control over the mark sufficient to meet the definition of "registrant" and provide standing to sue to enforce the trademark. *Fin. Inv. Co. (Bermuda) v. Geberit AG*, 165 F.3d 526, 531 (7th Cir. 1998); *Experian Marketing Solutions, Inc. v. U.S. Data Corp.*, No. 8:09CV24, 2009 U.S. Dist. LEXIS 82075, *8 (D. Neb. 2009). Plaintiffs' mere license to "use" the trademark is

insufficient to provide standing to sue for trademark infringement under 15 U.S.C. § 1114, and Plaintiffs' third cause of action for trademark infringement should be dismissed.

### ii.    Plaintiffs fail to sufficiently plead the use of the mark in commerce.

Even if Plaintiffs had established standing to bring the cause of action for trademark infringement, Plaintiffs' claims for trademark infringement and false designation of origin would still fail due to Plaintiffs' failure to sufficiently plead that the subject mark has been used by Defendants in commerce. A foundational aspect of both trademark infringement and false designation of origin claims is that there must be "use in commerce," which, under 15 U.S.C. § 1114(1)(a)  includes "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" The phrase "use in commerce" as it applies to goods has been defined by 15 U.S.C. § 1127 as occurring when a mark "is placed in any manner on the goods" and "the goods are sold or transported in commerce." *Id.* Plaintiffs have failed to plead anything beyond "labels and conclusions" that would allow the court to draw a reasonable inference that Defendant Clement used the subject trademark in commerce. *See Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012).

Notably, none of Plaintiffs' allegations under Counts III, IV, and VI for trademark infringement and false designation of origin and unfair competition specifically identify any defendants but instead group all defendants together in broad-brush non-specific allegations. The Complaint fails to make any allegations of Defendant Clement's use of the trademark in

16

commerce in any way. The Complaint similarly fails to identify any basis for the assertion that Defendant Clement was even involved in any way in the www.walkawaypac.com website complained of by Plaintiffs. None of the numerous tweets produced by Plaintiffs in Exhibit A to the Complaint (Compl. Ex. A, ECF No. 1-1) show Defendant Clement referencing or interacting with the www.walkawaypac.com website. Nothing in the Complaint or Exhibit A thereto contains any allegations whatsoever reflecting alleged use of the subject trademark by Defendant Clement "in commerce." Plaintiffs can produce no such evidence, either, because the www.walkawaypac.com website is noncommercial. The website is embraced by the pleadings due to Plaintiffs repeatedly citing the website and Plaintiffs providing screen shots of the website within Exhibit A to their Complaint. (Compl. Ex. A at 20-32, ECF No. 1-1). Review of the website makes clear that there is no commercial activity being conducted—there are no links identifying goods to be purchased, there are no links to donate to a cause, there are no opportunities to purchase, sponsor, or support anything. There is no service to be obtained. The website does not provide any opportunity for visitors to the site to pay money. Put simply: it is a noncommercial website. What is clear upon visiting the website is that its purpose is to provide critical commentary and to call attention to the actions of Straka and the various Walk Away entities.

Plaintiffs' Complaint, and the materials embraced by the Complaint, such as the www.walkawaypac.com website, clearly reflect that Plaintiffs have failed to allege the foundational aspect of their claims-- commercial use—and that no commercial use is present on the allegedly offending website. Dismissal of Plaintiffs' third, fourth, and sixth causes of action are appropriate.

### iii.   Plaintiffs have failed to plausibly allege any likelihood of confusion.

Another foundational aspect of Plaintiffs' claims for trademark infringement and false designation of origin and unfair competition that ties together with commercial use is that such commercial use must be likely to cause confusion. Where a plaintiff "fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6)." *Jack Daniel's Properties, Inc. v. VIP Prods. LLC,* 143 S.Ct. 1578, 1589 n.2 (2023). Plaintiffs allege in ¶ 198 of the Complaint that the www.walkawaypac.com website is "likely to cause confusion and mistake. . . and does falsely create the impression that the content published on that website is published, authorized or approved by Plaintiffs. . ." (Compl. ¶ 198, ECF No. 1). But, Plaintiffs provide no explanation as to how the website would be likely to cause confusion to a reasonably prudent person. This is because there is no explanation—the website simply would not and could not lead a reasonably prudent person to be confused. Plaintiffs allege that the website contains defamatory claims about Plaintiff Straka, including that "Mr. Straka steals money from donors, which is false;" and "Mr. Straka was convicted of 'insurrection,' which is false." (Compl. ¶ 54, ECF No. 1). A visit to the website immediately brings up the phrases "The #Walkaway Buster" and "The #Walkaway Con-Man Stop the Grift." It directly criticizes Plaintiff Straka. No reasonable person would think or believe upon visiting the www.walkawaypac.com website that the content was "published, authorized or approved by Plaintiffs" as alleged by Plaintiffs. (Compl. ¶ 198, ECF No. 1). No plausible allegation of confusion has been alleged or can even be established here and, accordingly, Plaintiffs' Complaint is appropriate for dismissal under Fed. R. Civ. P. 12(b)(6).

As noted by Defendant Dew in support of her Motion to Dismiss, Plaintiffs want to have their cake and eat it, too—they want to assert that there is trademark infringement due to purported similarities in the website but also that the website is false and defamatory.  These two things cannot mutually exist and, in truth, reflect the weakness in Plaintiffs' claims.

Based upon the foregoing, Plaintiffs have not and cannot plausibly allege a likelihood of confusion between the trademark and the allegedly infringing website. Plaintiffs' trademark infringement claim and claims of false designation of origin and unfair competition (Claims III, IV, and VI) all should be dismissed under Fed. R. Civ. P. 12(b)(6).

### C.  Plaintiffs' state law claims are not viable.

Plaintiffs have presented four causes of action (counts I, II, VI, and VII) under Nebraska law. It is within this court's discretion to decline to exercise supplemental jurisdiction where, as is the case here, Plaintiffs have failed to state any viable federal claims. *Mountain Home Flight Serv., Inc. v. Baxter Cty. Ark*, 758 F.3d 1038, 1045 (8th Cir. 2014).  If the Court chooses to retain supplemental jurisdiction, dismissal of Plaintiffs' state law claims is warranted under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

      i.     Plaintiffs have failed to state a claim for false designation of origin or unfair competition under Nebraska Law.

Plaintiffs present a cause of action for false designation of origin and unfair competition under Nebraska law in Count VI of Plaintiffs' Complaint. As discussed above in section III.B. of this memorandum, the elements of a cause of action for false designation of origin and unfair

competition under Nebraska law can be considered to be the same as Plaintiffs' federal claims under the Lanham Act. *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 397 n.1 (8th Cir. 1987). Like the federal counterpart, Nebraska Revised Statute § 87-302 has a comparable requirement of use in commerce. Therefore, Plaintiffs' claim under Nebraska law for false designation of origin and unfair competition fails for the same reasons addressed when responding to Plaintiffs' third and fourth causes of action.

### ii.  Plaintiffs have failed to state a claim for defamation.

Count II of Plaintiffs' Complaint presents a state law cause of action for defamation. Nebraska Revised Statute § 25-208 provides that the statute of limitations for defamation is one year. To be able to establish a claim for defamation, a plaintiff must establish,

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

*Palmtag v. Republican Party of Nebraska*, 315 Neb. 679, 693 (2024). Moreover, where a plaintiff is a public official or public figure, the plaintiff must establish actual malice by clear and convincing evidence. *Id.* at 694. Plaintiff bears the burden to establish by clear and convincing evidence "the element of falsity of the published statements." *Id.* Actual malice has been defined as "knowledge of falsity or reckless disregard for the truth." *Id.* at 699. This elevated requirement of actual malice has been recognized by the United States Supreme Court. *New York Times Co. v. Sullivan*, 376 U.S. 254, 267 (1964). Plaintiff Brandon Straka describes himself as a "conservative journalist, political commentator, activist and prominent social media influencer" and accordingly this elevated standard should apply to Plaintiffs' claims. (Compl. ¶1, ECF No. 1).

Plaintiffs' Complaint presents a shot-gun style approach as to its allegations against Defendants, but also in its approach to the claims of Plaintiffs. Plaintiffs do not specify which Plaintiff or Plaintiffs bring each cause of action. While the allegations surrounding the defamation claims all appear to focus solely on Plaintiff Brandon Straka, for purposes of the argument, Defendant Clement will continue to refer to Plaintiffs in the plural as that appears to be how Plaintiffs pleaded. By referring to Plaintiffs in the plural, Defendant Clement does not, however, concede that Plaintiffs Walkaway Campaign Pac and Walkaway Foundation have sufficiently pleaded claims for defamation. To the contrary, Defendant Clement asserts that Plaintiffs Walkaway Campaign Pac and Walkaway Foundation have completely failed to present any evidence or allegations of defamation against Defendant Clement and any purported claims of Plaintiffs Walkaway Campaign Pac and Walkaway Foundation for defamation should be dismissed for failure to state a claim upon which relief can be granted due to a complete failure of allegation and proof of the cause of action.

Plaintiffs' claims for defamation fail for two reasons. First, many of the (often duplicative) tweets cited to by Plaintiffs through Exhibit A to the Complaint, and the hyperlinks therein to screen recordings of more tweets, fall outside of the statute of limitations for defamation claims in Nebraska, and therefore are time barred. Second, the tweets purportedly written by Defendant Clement which are complained of by Plaintiffs are not, in fact, defamatory and thus fail to present a claim for defamation.

        (1) **The Purported Tweets Sent Outside of the Statute of Limitations Should Be Dismissed.**

The claims of Plaintiffs arising out of purported tweets of Defendant Clement which were tweeted over one year prior to the filing of the subject lawsuit should be dismissed as outside of the statute of limitations. Where the face of a complaint shows "that the cause of action is time barred and the plaintiff does not allege facts to avoid the bar of the statute of limitations," dismissal upon a motion to dismiss for failure to state a claim upon which relief can be granted is appropriate. *Bonness v. Armitage*, 305 Neb. 747 (2020). Plaintiffs filed the instant action on January 19, 2024; under the one-year statute of limitations for defamation claims, any tweets issued prior to January 19, 2023, are time-barred. In paragraph 122 of Plaintiffs' Complaint, Plaintiffs reproduce a tweet purportedly made by Defendant Clement. Notably, this tweet is dated January 18, 2023, outside of the statute of limitations. (Compl. ¶ 122, ECF No. 1). Similarly, within Exhibit A to the Complaint, there are numerous tweets from prior to January 19, 2023, including tweets found on pages 6, 54, 70, 72, 76, 146, 161 and 178. (Compl. Ex. A at 6, 54, 70, 72, 76, 146, 161 and 178, ECF No. 1-1). Exhibit A also includes hyperlinks to screen recordings of tweets purportedly sent by Defendant Clement on page 52, and each screen recording includes purported tweets which were tweeted prior to January 19, 2023. (Compl. Ex. A at 52, ECF No. 1-1). Many of the tweets produced by Plaintiff in Exhibit A are undated and may also be outside of the statute of limitations. In any event, the tweets which were purportedly tweeted prior to January 19, 2023, should not be considered and Plaintiffs' claims relative to those tweets should be dismissed.

(2) **The Purported Tweets Are Not Defamatory and Do Not Present a Claim Upon Which Relief Can Be Granted.**

Plaintiffs cannot satisfy the necessary requirements to establish Defendant Clement defamed them; specifically, Plaintiffs have failed to cite false and defamatory statements concerning Plaintiffs and cannot establish actual malice. Whether a reasonable fact finder could conclude that the published statements imply a provably false assertion is a threshold question in a defamation suit. *Steinhausen v. Home Services of Neb.*, 289 Neb. 927, 940 (2015). The burden is on Plaintiffs to establish falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). For a plaintiff to establish material falsity, they must prove that the "gist or sting" of the purported defamation would have a different effect on the audience than the literal truth; moreover, where "the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991); *Tannerite Sports, LLC v. NBC Universal News Group, a division of NBC Universal Media, LLC*, 864 F.3d 236, 242-43 (2nd Cir. 2017)(citation omitted).  Importantly, while statements of fact can be defamatory, "subjective impressions" cannot be defamatory, as those are opinions and protected by the First Amendment. *Steinhausen*, 289 Neb. at 940.

Determining whether a statement is one of fact or one of opinion is a question of law for the trial judge to decide, and the "totality of the circumstances" test must be applied. *Id.* The Court should consider factors including "(1) whether the general tenor of the entire work negates the impression that the defendant asserted an objective fact, (2) whether the defendant used figurative or hyperbolic language, and (3) whether the statement is susceptible of being proved true or false." *Id.* Context of the statement is important, and consideration should be given to

whether an ordinary reader would view a statement as one of fact or opinion. In addition to the context of the communication, a court looks to the knowledge, understanding, and reasonable expectations of the audience to whom the communication was directed, taking cues from "the broader setting in which the statement appears."

*Id.* at 940-41. The context of the purported tweets at issue here makes clear that the statements made via the tweets were opinion.   Courts have protected statements made in online forums as statements of opinion rather than fact. *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015). Twitter was the forum for all of the defamation alleged by Plaintiffs in this case.  Twitter has been recognized, in the context of defamation cases, to be "a public forum where a reasonable reader will expect to find many more opinions than facts" and is a forum where readers are free to "reach different conclusions" than what is put forth in a tweet. *Broughty v. Bouzy,* No. CV226458SDWJRA, 2023 U.S. Dist. LEXIS 136681, *16 and *21 (D.N.J. Aug. 7, 2023).  Statements can be offensive while still being nonactionable opinions because a reasonable reader would not believe the tweets to be conveying facts. *Id.*at *21.

Taking the tweets attributed to Defendant Clement together and viewing them in light of the context and forum—Twitter discussions related to a "political commentator, activist, and prominent social media influencer"—it is clear that the tweets are nonactionable statements of opinion. Within the tweets produced by Plaintiffs are tweets from people other than the defendants in this action, including people who are apparent supporters of Plaintiff Brandon Straka, responding with comments like "I don't agree with you," indicating difference of *opinion*. (Compl., Ex. A at 142, ECF No. 1-1) And comments like "Opinions do not equal facts." (Compl., Ex. A at 207, ECF No. 1-1). One individual even commented that an article Defendant Clement tweeted about was an "op-ed" and "based off of media reports & inuendo, not facts,"

24

clearly recognizing the difference between tweets and op-ed pieces and actual facts. (Compl., Ex. A at 67, ECF No. 1-1). Another individual tweeted "I'm sad u believe this," indicating an understanding that the purported tweet of Defendant Clement was a statement of belief not of fact. (Compl., Ex. A at 35, ECF No. 1-1). The evidence produced by Plaintiffs establishes that the ordinary reader did view the alleged tweets of Defendant clement as opinion and understood that Twitter was a forum where the readers would find opinions and be free to "reach different conclusions" from what was presented in the tweets. For these reasons, Plaintiffs' defamation claims against Defendant Clement fail and should be dismissed.

The tweets attributed to Defendant Clement are further not actionable as they contain opinion and rhetorical hyperbole. In *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927 (2015), the Nebraska Supreme Court extensively considered opinion and rhetorical hyperbole, writing,

> [a]s noted, whether the language is hyperbolic is relevant to distinguish fact from opinion. Rhetorical hyperbole—"language that, in context, was obviously understood as an exaggeration rather than a statement of literal fact"—is not actionable. In particular, "[t]he ad hominem nature of abusive epithets, vulgarities, and profanities," which some writers "use to enliven their prose," indicates that the statement is hyperbole.

*Id.* at 941. The court in *Steinhausen* went on to list examples of words that fall under the categories of rhetorical hyperbole and opinion, including name calling generally, "idiot," "raving idiot," "[i]diots [a]float," "stupid," "moron," "nincompoop," "raving maniac," "pitiable lunatics," "wacko," "nut job," "hysterical," "crazy," and "crank." *Id.* at 941-42.  Plaintiffs allege, without citing to specific tweets, that Defendant Clement posted "a series of tweets attacking Mr. Straka as incompetent," however, as the examples from *Steinhausen* demonstrate, the

Nebraska Supreme Court has recognized that terms challenging an individual's competence, such as "idiot" and "stupid" and "moron" are all opinion. (Compl. ¶110, ECF No. 1).

Examples of tweets attributed to Defendant Clement again reflect that these tweets are instances of opinion. For example, the tweets refer to Brandon Straka as a grifter, racist, informant, and convicted criminal. (Compl. Ex. A at 54, 67, 82, ECF No. 1-1). Such statements are not defamatory. Multiple courts across the country have recognized that the term "grifter" is not defamatory per se nor is it defamatory as a matter of law, despite being an unflattering term. *Tate v. Bradley*, 837 F.2d 206, 208 (5th Cir. 1988); *Russo v. Conde Nast Publications*, 806 F. Supp. 603, 609 (E.D. La. 1992); *Broughty v. Bouzy*, No. CV226458SDWJRA, 2023 U.S. Dist. LEXIS 136681, *6 (D.N.J. Aug. 7, 2023). Moreover, tweets suggesting that someone was a "professional liar" and used donations from followers to make himself richer or to take certain actions have been found to be nondefamatory. *Id.* Plaintiffs here take issue with purported tweets of Defendant Clement (unspecified and undated tweets) that suggested Plaintiff Straka used money from donors to get surgery and go on vacations. (Compl. ¶101, ECF No. 1). Such comments, particularly in light of their context as part of a purported twitter exchange, would be opinion and thus not defamatory.

The word "racist" in the context of a defamation claim has recently been addressed by the District of Nebraska in *Starks v. Tula Life, Inc.*, 2023 U.S. Dist. LEXIS 128760 (D. Neb. July 26, 2023)., when it granted Defendant TULA Life, Inc.'s motion to dismiss. Plaintiff Starks alleged she was defamed because TULA referred to her as a racist and implied that she made hateful and racist remarks. *Id.* at *7. The court found that "calling an individual a 'racist' or

characterizing a person's statement as being 'racist' or 'hateful,' standing alone, is not 'capable of proof or disproof." *Id.* at *10 (citations omitted). Therefore, as has been recognized by many courts, "racist" is not actionable. *Id.* The purported tweets issued by Defendant Clement using the term "Racist" are, under the foregoing law and analysis, not defamatory or actionable.

Plaintiffs also take issue with the alleged tweets (again, often unspecified and undated tweets) of Defendant Clement referring to Plaintiff as an informant or snitch. (Compl. ¶ 101, ECF No. 1; Compl. Ex. A at 75, 77, 79, 82, 85, 100, 155 ECF No. 1-1). Many courts across the United States have "held, as a matter of law, that [accusing someone of acting as an informant] cannot be defamatory." *Agnant v. Skahur*, 30 F. Supp. 2d 420, 424 (S.D.N.Y. Dec. 18, 1998)(citing numerous courts which had addressed the term "informant" and found as a matter of law that it was not defamatory). Even if the term "informant" was actionable as a matter of law, it further would not be actionable in this instance as the publicly available court records related to Plaintiff Brandon Straka's criminal charges stemming from January 6, 2021, reflect that Straka indeed provided assistance to the government through providing information. (Ex. 2, Stryker Viehman Dec., Ex. B-D). The statement that Plaintiff Brandon Straka is an informant is true and therefore not actionable.

The statements related to Plaintiff Brandon Straka's criminal convictions similarly are not defamatory because of the truth asserted. Plaintiff Straka entered into a plea agreement with the United States Government for the charge of Engaging in Disorderly and Disruptive Conduct in the Capitol Building or Grounds, in violation of 40 U.S.C. § 5104€(2)(D). (Ex. 2, Stryker Viehman Dec., Ex. B). This plea agreement detailed that Plaintiff Straka agreed that the

"Statement of Offense" attached to the plea "fairly and accurately" described his "actions and involvement in the offense to which [he] is pleading guilty." (Ex. 2, Stryker Viehman Dec., Ex. C). The Statement of Offense included admission by Plaintiff Straka that he entered the restricted area of the U.S. Capitol, knowing it was restricted, that he engaged in disruptive conduct, that he encouraged others to enter the U.S. Capitol while the U.S. Capitol Police were attempting to prevent people from doing so, and that he encouraged others to take a U.S. Capitol Police Officer's shield. (Ex. 2, Stryker Viehman Dec., Ex. C). Plaintiff Brandon Straka was convicted for his role in the January 6, 2021, events at the United States Capitol—this is a fact. Tweets asserting Plaintiff Straka is a criminal or convicted criminal are truthful and therefore not defamatory. Tweets that Plaintiff Straka's criminal charges were reduced after he provided information to the United States government are similarly truthful— the Criminal Complaint reflects three charges, including at least one felony, and Plaintiff Straka was ultimately charged with a lesser offense after providing assistance to the government.  (Ex. 2, Stryker Viehman Dec., Ex. A-D).

Plaintiffs' claims for defamation also fail as Plaintiffs have not alleged damages caused by the publications. Like the allegations against the various defendants, Plaintiffs have failed to plead anything other than generic and conclusory allegations that Plaintiffs "suffered special damages, presumed damages and actual damages, including, but not limited to, loss of income and injury to their business, injury to their reputation, costs and other out-of-pocket expenses." (Compl. ¶ 190, ECF No. 1). Thus, Plaintiffs can only satisfy the fourth element of defamation if the tweets at issue are actionable irrespective of special harm. In other words, Plaintiffs can only recover if the tweets are defamatory per se. *Palmtag v. Republican Party of Nebraska*, 315 Neb. 679,

692-93 (2024). The Nebraska Supreme Court has held that "spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or an unfitness to perform the duties of an office or employment, or if they prejudice on in his or her profession or trade or tend to disinherit one." *Matheson v. Stork*, 239 Neb. 547, 553 (1991). Plaintiffs pleaded that the statements alleged constitute defamation *per se* because they purportedly "accuse and impute to Mr. Straka (a) one or more crimes, including insurrection, and (b) unfitness to perform the duties of an office or employment for profit, including lack of ethics, lack of integrity, lack of veracity, lying, cheating and stealing." (Compl. ¶ 175, ECF No. 1). The statements within the tweets purportedly authored by Defendant Clement do not meet the definition of defamation *per se* because, as discussed above, Plaintiff Brandon Straka indeed engaged in insurrection and do not "falsely impute" Plaintiff Straka with a crime. *Cf. Straka v. NBC Universal Media, LLC*, No. 8:22CV434, 2023 U.S. Dist. LEXIS 137603 (D. Neb. Aug. 8, 2023)(statements that Straka "stormed the capitol" not actionable as defamation). Moreover, the other remarks allegedly made are, for the reasons discussed above, not defamatory and not actionable.

Plaintiffs have failed to state an actionable claim for defamation under Nebraska law. The alleged tweets are outside of the statute of limitations and therefore not actionable, opinion and not actionable, or opinion and outside of the statute of limitations and thus not actionable. Plaintiffs' claims for defamation against Defendant Clement can and should be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

iii. **Plaintiffs have failed to state a claim for tortious interference.**

Count I of Plaintiffs' Complaint asserts a cause of action for tortious interference. As with the claims for trademark infringement and false designation of origin and unfair competition (counts III, IV, and VI), Plaintiffs make no specific allegations within Count I against Defendant Clement, but broad-brush make each allegation against Defendants generally. In the sections of facts entitled "Interference With Vendors" and "The Pile-on Technique in Action" no allegations are specifically lodged against Defendant Clement, but other defendants are called out by name (or, more accurately, twitter handle). Although it is unclear from the face of the Complaint whether the tortious interference claim applies to Defendant Clement, even assuming it does, Plaintiffs' claim fails.  None of the factual allegations alleged in the Complaint nor the tweets provided as an exhibit to the Complaint can support the conclusion that Defendant Clement, as one of the defendants, caused "numerous vendors to stop doing business with Mr. Straka and his organization." (Compl. ¶ 63, ECF No. 1; Compl. Ex. A, ECF No. 1-1).

Beyond the fact that Plaintiffs have failed to even allege facts against Defendant Clement as to the tortious interference count, Plaintiffs cannot meet the standard for tortious interference as set forth under Nebraska law. In *Denali Real Estate, LLC v. Denali Custom Builders, Inc.*, 302 Neb. 984 (2019), the Nebraska Supreme Court stated the standard as follows:

> To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference cause the harm sustained, and (5) damages to the party whose relationship or expectancy was disrupted.

*Id.* at 1004. Plaintiffs have not sufficiently pleaded the existence of valid business expectancies or relationships.  The Complaint speculates as to Defendants' knowledge of the vendors, contract expectations, potential speaking engagements, and more, without identifying how Defendants would have such knowledge beyond doing "research and review of available information on the internet." (Compl. ¶¶ 22, 155, 156, ECF No. 1). Plaintiffs identify a list of vendors they assert were openly pursued by "Defendants" (after specifically calling out actions of defendants other than Defendant Clement) but provide no basis or allegation that Plaintiffs had a valid business relationship or expectancy with any of those vendors. (Compl. ¶ 83, ECF No. 1).

Looking at the third element, Plaintiffs will similarly fail. In the first instance, Plaintiffs have failed to specifically identify the intentional act of interference of Defendant Clement with any valid business expectancy, as revealed by the text of the Complaint and the tweets within Exhibit A to the Complaint (Compl., ECF No. 1; Compl. Ex. A; ECF No. 1-1).  Plaintiffs also fail at the third step because the interference must be unjustified. Where there is justification of the act of interference, there will be no liability on the part of the interferer. *Matheson v. Stork*, 239 Neb. 547, 5551 (1991). Moreover, providing truthful information does not lead to liability for interfering with a business relationship. *Thompson v. Johnson*, 299 Neb. 819, 829-30 (2018).

First Amendment considerations also yield the same result as the foregoing arguments— that Plaintiffs do not have a claim for tortious interference. The First Amendment provides the right to free expression and the consumer's right to boycott. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). When looked at through this First Amendment lens, Plaintiffs' allegations do not give rise to an actionable claim for tortious interference.

Based upon the foregoing, Plaintiffs' claims for tortious interference should be dismissed.

### iv.   Plaintiffs' claim for civil conspiracy fails.

Count VII of Plaintiffs' Complaint asserts a cause of action for civil conspiracy, which necessarily fails. The Nebraska Supreme Court has defined civil conspiracy as "a combination of two or more persons to accomplish by a concerted action an unlawful or oppressive object, or lawful object by unlawful or oppressive means." *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 1026 (2015). The plaintiff must "establish that the defendants had an expressed or implied agreement to commit an unlawful or oppressive act that constitutes a tort against the plaintiff." *Salem Grain Co. v. Consol. Grain & Barge Co.*, 297 Neb. 682, 700 (2017). A conspiracy, however, "is not a separate and independent tort in itself, but rather is dependent upon the existence of an underlying tort. Without such underlying tort, there can be no claim for relief for a conspiracy to commit the tort." *United Gen. Title Ins. Co.*, 289 Neb. at 1026. As with other counts addressed previously herein, Plaintiffs have failed to assert any factual allegations against Defendant Clement with regard to the civil conspiracy claim. Moreover, as Plaintiffs have failed to establish or state a claim for relief for any of the torts alleged, there is no underlying tort upon which Plaintiffs can base their claim for civil conspiracy and thus, Plaintiffs' civil conspiracy claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

### CONCLUSION

Plaintiffs' claims against Defendant Clement fail for numerous reasons such that dismissal is appropriate. The court lacks personal jurisdiction over Defendant Clement because

he is a resident of New York and has not expressly directed his activities toward the state of Nebraska. Similarly, Plaintiffs have failed to establish venue is proper in Nebraska; Defendant Clement has no connection to Nebraska and has not conducted any relevant activities in the state of Nebraska. Plaintiffs' long, non-specific Complaint fails to meet the basic pleading requirements set forth by the Federal Rules of Civil Procedure to a degree that warrants dismissal for failure to state a claim for relief. Plaintiffs' claims under the Lanham Act fail because Plaintiffs have failed to allege facts to establish standing to bring their cause of action for trademark infringement, have failed to sufficiently plead the use of the mark in commerce, and have failed to plausibly allege any likelihood of confusion.  This Court has the discretion to decline to retain supplemental jurisdiction over Plaintiffs' state law claims; in the event the Court chooses to retain supplemental jurisdiction, the state law claims also warrant dismissal. Plaintiffs' state law claim for false designation of origin and unfair competition fail for the same reasons the corresponding federal claim does. Plaintiffs' claims for defamation also fail as the referenced tweets are outside of the statute of limitations, not defamatory, and/or present opinion. Plaintiffs failed to plead specific allegations against Defendant Clement with regard to the tortious interference claim and the claim should fail on those grounds as well as Plaintiffs' failure to plead facts to support each element of the alleged claim. Finally, Plaintiffs' claim for civil conspiracy fails as such claims are conditioned upon the existence of a valid underlying tort and all torts alleged by Plaintiff fail.  For the foregoing reasons, Defendant Clement's Motion to Dismiss should be granted. Accordingly, Defendant Clement respectfully requests an Order dismissing Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction, lack

of personal jurisdiction, lack of venue, and failure to state a claim upon which relief may be granted.

Dated this 25th day of March, 2024.

Respectfully submitted,

DAVID S. CLEMENT, Defendant
By: */s/ Leslie S. Stryker Viehman*
Nolan, Olson & Stryker, P.C., L.L.O.
444 Regency Parkway Dr., Ste. 109
Omaha, NE 68114
402-932-5126
Leslie S. Stryker Viehman, #25556
Brian D. Nolan, #17764
leslie@nolanolson.com
bnolan@nolanolson.com

CERTIFICATE OF COMPLIANCE

I, Leslie S. Stryker Viehman, hereby certify that the foregoing complies with Nebraska Local Rule 7.1(d)(1)(B). I certify this Memorandum contains 9,796 words, which includes the Memorandum's case caption, signature block and certificate of compliance.

*/s/ Leslie S. Stryker Viehman*