## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| BRANDON STRAKA, WALKAWAY CAMPAIGN PAC, AND WALKAWAY FOUNDATION, <br><br><br><br> *Plaintiffs*, <br><br> -*v.*- <br><br> DAVID S. CLEMENT, @BRAWNDOSNITCHKA, @CHICHIVISION18, @MIKECLOVER7, @STONEPGH, THATSQUITEAWALK, @HIGHENANONTOO and @ZIBTARA *a/k/a* MIRANDA DEW. <br><br> *Defendants*. | Docket No. 8:24-CV-00024-JFB-SMB <br><br> **PLAINTIFFS' COMBINED BRIEF IN OPPOSITION TO DEFENDANTS DAVID S. CLEMENT AND @ZIBTARA, *a/k/a* MIRANDA DEW'S MOTIONS TO DISMISS** |

Plaintiffs Brandon Straka ("Straka"), Walkaway Campaign PAC ("Walkaway PAC"), and Walkaway Foundation (collectively, "Plaintiffs") hereby file their combined brief in opposition to Defendants David S. Clement and Miranda Dew's respective motions to dismiss.

### I.     INTRODUCTION

The defendants in this action have joined forces to carry out a common scheme: viciously target Plaintiffs in hopes of destroying their reputation, their business relationships, and their intellectual property rights. While several of the defendants are still known to Plaintiffs only by their online pseudonyms, Defendants David S. Clement ("Clement") and @zibtara *a/k/a* Miranda Dew ("Dew") are two of the key players in the malicious campaign to harm Plaintiffs.

Clement and Dew do not deny that they have engaged in most of the conduct extensively documented in Plaintiffs' First Amended Complaint ("FAC"). Nor could they as their despicable

conduct is archived online for all to see. Clement and Dew's similar motions to dismiss should both be denied. Clement and Dew's extensive efforts to harm Plaintiffs in Nebraska confer this Court with personal jurisdiction and make venue proper. Defendants' efforts to frustrate Plaintiffs' business relationships by spreading false and defamatory information about them is textbook tortious interference—not the high-minded "boycott" that Clement and Dew tried to spin it as. Defendants' malicious lies about Plaintiffs—including false allegations of criminality, drug use, betrayal of their supporters, and much more—are far beyond the bounds of the First Amendment and constitute defamation. Defendants' abuse of a trademark Plaintiffs licensed through their operation of a deceptive website make them liable under state and federal trademark law. As each of Defendants, including Clement and Dew, worked together to target Plaintiffs in this manner, they are further liable for civil conspiracy.

The Court should therefore deny Clement and Dew's motions to dismiss.

## II.    STATEMENT OF FACTS

The Plaintiffs in this case are Straka, a resident of Omaha, Nebraska who is a political commentator, conservative journalist, activist, and prominent social media influencer; WalkAway PAC, a political action committee that assists with the operation of the #WalkAway Campaign; and Walkaway Foundation, a 501(c)(3) nonprofit. FAC ¶ 1.

Walkaway PAC and Walkaway Foundation are two Virginia-based entities founded by Straka, and through which Straka, among other like-minded individuals, further their goal of shedding light on divisive politics while encouraging and supporting Americans who have identified with the political Left to "walk away" from extremist views and activities. *Id.* ¶¶ 1, 15–16. Plaintiffs are also licensees of the #WALKAWAY registered trademark, U.S. Reg. No. 5,868,605. *Id.* ¶ 199. Plaintiffs have used the #WALKAWAY trademark to such an extent that it

has taken on a secondary meaning, such that purchasers and the public interpret any service and advertisement bearing such trademark as being a service or affiliate of Plaintiffs or being authorized by them. *Id.* ¶ 200. All Plaintiffs have ties to or opportunities with individuals or businesses in Nebraska related to their political, nonprofit, or organizational missions. *Id.* ¶ 27. For example, #WalkAway has an active chapter in Nebraska with members, leaders, and financial donors. *Id.* ¶ 28.

Defendants are anonymous and pseudo-anonymous individuals residing in various jurisdictions across the country who have dedicated a substantial portion of the past three years, at a minimum, to a course of conduct resulting in injury to the reputations and business interests of Straka and the other Plaintiffs. *Id.* ¶¶ 6–7, 17–23. To the best of Straka's knowledge, Defendants have no personal relationship or history with Straka, except Dew, with whom Straka had a brief friendship twenty to twenty-five years ago. *Id.* ¶¶ 17–18, 41.

Nevertheless, during this three-year timeframe, Defendants engaged in the frequent, widespread, and coordinated publication of false information about Straka, WalkAway PAC, and WalkAway Foundation, painting each in a negative light. *Id.* ¶¶ 31–51, 132, 177. Twenty-five examples of Defendants' defamatory speech about Plaintiffs, which are discussed in greater detail below, are listed in sub-paragraphs A through Y of paragraph 178 of the FAC. *Id.* ¶ 178. Collectively, Defendants have posted about Straka on X over 30,000 times during the past three years. *Id.* ¶¶ 8, 17–23, 158, Ex. A. Clement and Dew are together responsible for roughly half of these posts. *Id.* ¶¶ 17, 21, Ex. A.

Defendants also created a website, <u>WalkAwayPac.com</u>, dedicated to publishing false statements about Plaintiffs and their employees and bearing the #WALKAWAY mark that is inextricably associated with Plaintiffs, confusing those who choose to visit this website. *Id.* ¶¶ 37,

3

57–58, 206, 213. Defendants refer to this website as the "#WalkAway Buster." *Id.* ¶ 58. Plaintiffs maintain and operate a website with a highly similar domain name attached to it: https://walkawaypac.org. *Id.* This, too, confuses visitors attempting to visit Plaintiffs' website. *Id.* ¶¶ 200-03. Defendants are fully aware of Plaintiffs' personal and professional ties to Nebraska, and Defendants' conduct directed at Plaintiffs has disrupted, harmed, or otherwise interfered with such ties. *Id.* ¶ 27.

Defendants' campaign to harm Plaintiffs began in 2018, shortly after Straka launched #WalkAway, when Clement spent months harassing Straka on Facebook. *Id.* ¶ 32. After Straka blocked him on Facebook, Clement moved to Twitter (now known as X), where his rhetoric began to take on a more aggressive and hostile character. *Id.* Shortly thereafter, Defendants @BrawndoSnitchka, @ChiChiVision18, @highenanontoo, and @toolejk joined Clement in posting a substantial volume of tweets nearly every day, focusing on Straka's character and activities. *Id.* ¶ 33. These Defendants' efforts to injure Straka's reputation were aided by the activities of Defendants @MikeClover7 and @StonePGH, who would, in addition to promoting the website described above, obtain information about the vendors with whom Straka did business and then reach out to such vendors and falsely inform them that their association with Straka was aiding him in committing crimes, including "wire fraud" and murder. *Id.* ¶¶ 35–38. Dew also assisted these efforts by falsely claiming herself to be an "insider expert" about Straka—a man whom she had not known for at least two decades—but about whom she claimed to be able to provide information regarding intimate details of his personal and professional lives. *Id.* ¶¶ 39–41. Defendant @ThatsQuiteaWalk serves as an online "hub" for the other Defendants, where those Defendants have, in the past, gone to coordinate efforts and discuss the successes of one another's endeavors directed at Straka. *Id.* ¶ 44–45.

4

These efforts were intended to "take down" Straka, as they sought to ban both him and #WalkAway from the Internet and social media while eliminating his and other Plaintiffs' abilities to associate with various online platforms that would enable them to accomplish their personal and professional objectives. *Id.* ¶ 54. For instance, the website run by Defendants, WalkAwayPac.com, states, among other things, that Straka stole money from his donors, sold "racist apparel," misused PPP funds, and actively seeks to suppress the right for minorities to vote. *Id.* ¶ 59. Not one of these assertions is true. *Id.* The website also claims that Straka, because of his activities at the U.S. Capitol on January 6, 2021, has been convicted of "insurrection" and is an "accused domestic terrorist." *Id.* While Straka was present at the U.S. Capitol on January 6, 2021, he never entered the building. *Id.* ¶ 13. He was nevertheless arrested for and pled guilty to one class B misdemeanor count of disorderly conduct in violation of 40 U.S.C. § 5104(e)(2)(D). *Id.* Straka was never charged with participating in any violence, vandalism, theft, destruction of property, or "insurrection" on January 6, 2021. *Id.* ¶ 14.

Concerning #WalkAway, the website claims, among other things, that the organization advocated engaging in terrorism, is an "insurrectionist organization," and, like Straka, seeks to suppress the rights of minorities to vote. Like those allegations directed toward Straka, not one of these assertions is true. *Id.* ¶ 59.

Despite the false nature of these statements, Defendants repeated and relied upon them when contacting the individuals and businesses with whom Plaintiffs did business. *Id.* ¶ 60. Defendants would claim that Plaintiffs were using the services of these individuals and businesses "to finance political violence" or otherwise aid in furthering criminal ambitions. *Id.* These assertions, too, were false. *Id.* Nevertheless, the existence of these assertions, and their repetition by various Defendants in short intervals, resulted in Plaintiffs losing all business with multiple

vendors essential to the success of their professional endeavors, including, among many others, Facebook, Instagram, Visa, Mastercard, PayPal, American Express, MailJet, and Mailer Lite. *Id.* ¶¶ 68, 76–77, 84, 88–89. The repetition of these false assertions by the various Defendants was not coincidental but rather the result of an organized effort to injure Plaintiffs by "chipping away those sources [Straka] uses for funding" what Defendants inaccurately label as "#DomesticTerrorist activities." *Id.* ¶¶ 92–93. Defendants told vendors that Straka "hires Proud Boys for his security. Money Mr. Straka raises goes directly into members of the Proud Boys' pockets." *Id.* ¶ 98. Straka has never collaborated with the Proud Boys and has no affiliation with them. *Id.* ¶ 73.

Defendants have also extended the scope of their campaign by targeting thousands of Plaintiffs' supporters directly. *Id.* ¶ 101–02. Defendants have told Plaintiffs' supporters, falsely, that Straka is a "convicted felon," was "hanging out with a convicted pedophile on #jan6," "used QAnon lies to recruit rioters," and, on January 6, 2021, "rushed cops." *Id.* ¶¶ 103–06. The assertions made by Defendants to Straka's supporters go beyond Straka's political endeavors as well. For instance, after Straka made a post online discussing his mother, who had recently suffered a stroke, Clement replied to a comment made by one of Mr. Straka's supporters, insinuating that Straka was capitalizing on his mother's poor health to garner sympathy and support from "elderly maga." *Id.* ¶¶ 113–14. The comment pool then flooded with posts from other Defendants similarly accusing Straka of "using his own granny to e-beg." *Id.* ¶ 116. This is just one example of how Defendants have, acting in concert, directly targeted Straka's reputation among his supporters, as Defendants have also used false imagery and assertions to variously claim or imply that Straka is "rabidly anti-Semitic," an active drug user, and a pedophile. *Id.* ¶¶ 119, 124–27, 133–34.

These attacks on Straka's character have not ceased. *Id.* ¶ 164. On the contrary, every time Straka attempts to restore the reputation Defendants have damaged, Defendants resurface to ensure that Straka cannot nurture new professional relationships. Defendants have contacted numerous prominent conservative individuals and organizations to eliminate Straka's possibility of regaining some professional ground. *Id.* ¶¶ 135–41. As recently as Christmas Day, 2023, Defendants posted false or misleading content indicating that Straka had not won a civil case brought against him in connection with January 6, 2021—he had—and that he would say or do anything to prevent a jury from seeing the overwhelming evidence against him in the civil case. *Id.* ¶¶ 152–55. That same day, Defendants also attacked WalkAway Foundation, falsely stating that WalkAway Foundation "provided ZERO services" and "is funneling and diverting money to other causes and bank accounts." *Id.* ¶ 156.

## III.   ARGUMENT

### A.  The Court Has Personal Jurisdiction Over Clement and Dew.

The Court should reject Clement and Dew's personal jurisdiction challenges because Clement and Dew's malicious scheme to cause harm that Plaintiffs uniquely felt in the State of Nebraska subjects them to personal jurisdiction in this Court.

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts  to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (cleaned up). "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (citation and

internal quotation marks omitted). In Nebraska, the long-arm statute is coterminous with the Due Process Clause. *See* Neb. Rev. Stat. § 25-536(2) (extending jurisdiction to anyone with any relation or contact with Nebraska "to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States"). A defendant who causes "tortious injury" in Nebraska by engaging in a "persistent course of conduct" is expressly subject to the Court's jurisdiction. Neb. Rev. Stat. § 25-536(1)(D).

"Due process requires minimum contacts between a non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dever*, 380 F.3d at 1073 (cleaned up). There are two bases for "evaluating minimum contacts, general jurisdiction and specific jurisdiction."

This is a specific jurisdiction case in which "the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Id.* "The Supreme Court has recognized an 'effects test' that allows 'personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Venteicher v. Smyrna Air Ctr., Inc.*, No. 8:09CV272, 2009 WL 3254498, at *4 (D. Neb. Oct. 8, 2009) (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 956 F.2d 1384, 1390–91 (8th Cir. 1991)).

Intentional torts "can serve as the minimum contacts for specific jurisdiction if [the] acts were calculated to cause injury to the plaintiff in the forum state." *HVLPO2, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097, 1110 (D. Neb. 2016) (citing *Calder v. Jones*, 465 U.S. 783, 791. While the plaintiff in *Oxygen Frog, LLC* fell short of this bar, the court nonetheless explained various facts, which, if present, would have cured the jurisdictional defect:

> Here, there is no evidence that the defendants' conduct itself forms a connection with Nebraska. First, there is no evidence—as there was in *Calder*—demonstrating that the plaintiff's industry operates primarily in Nebraska, such that the alleged damage to the plaintiff's reputation would

> occur primarily in Nebraska. Nor is there evidence that the defendants sought to harm the plaintiff's reputation specifically with Nebraska residents: as discussed above, neither the Oxygen Frog website, nor the Oxygen Frog business page, nor the Glassifieds [sic] page was specifically targeted to Nebraska residents. And the alleged defamatory statements themselves do not mention Nebraska, rely on Nebraska sources, or relate events that took place in Nebraska.

*Id.*

While Clement and Dew's motions give the impression that the only connection this case has to Nebraska is Straka's domicile, the FAC tells a different story. Defendants are aware that Plaintiffs "have ties and opportunities to individuals and organizations in Nebraska related to Plaintiffs' political, nonprofit, and organizational missions," and they "sought to disrupt, harm, and interfere with the same through their tortious conduct." FAC ¶ 27. As an example, WalkAway Foundation has a chapter in Nebraska with active members, leaders, and donors, and Defendants' efforts to try to ruin Plaintiffs' reputation is aimed at, among other thing, disrupting WalkAway Foundation's Nebraska chapter. *Id.* ¶ 28. Defendants, particularly Clement, have plotted to contact Straka's probation officer in Nebraska, stating that they sent letters to her, and detailed their efforts to falsely report Straka for violating the terms of his probation, and encouraging others to do so, which would interfere with Straka's standing with the justice system in Nebraska.[1] *Id.* ¶ 29. Plaintiffs therefore alleged multiple facts that each support the exercise of personal jurisdiction as they show damage unique to Nebraska, an intent to cause harm in Nebraska, and tortious speech specifically targeted to Nebraska residents. *See Oxygyen Frog, LLC*, 187 F. Supp. at 1110.

---

[1] The Court should disregard Clement's attempt at evading this allegation by stating in his Brief that he denies this allegation. Despite submitting a declaration, Clement did not deny—or even mention—Plaintiffs' jurisdictional allegation related to Straka's probation officer. *See* ECF No. 38-1. The Court must therefore accept Plaintiffs' allegation as true for jurisdictional purposes. *See Hand v. Beach Entertainment KC, LLC*, 425 F. Supp. 3d 1096, 1106 (W.D. Mo. 2019) ("The allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." (citation and internal quotation marks omitted)).

9

Rather than grapple with the facts Plaintiffs pleaded, Clement and Dew rely heavily on *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010), which involved a non-resident's online complaints about a pet store in Missouri. *Johnson* is readily distinguishable as the court based its ruling on the lack of "evidence that the www.ComplaintsBoard.com website [where the speech was posted] specifically targets Missouri, or that the content of [the defendant]'s postings specifically targeted Missouri." *Johnson*, 614 F.3d at 796. Plaintiffs, in contrast, pleaded facts showing that Defendants did indeed target Nebraska through their efforts to disrupt the WalkAway Foundation's Nebraska chapter and Plaintiff's ties and opportunities in Nebraska and interfere with Straka's probation status in Nebraska.

Clement and Dew are therefore subject to this Court's jurisdiction by virtue of their efforts to injure Plaintiffs in a manner uniquely connected to Nebraska.

## B. Venue Is Proper in the District of Nebraska.

Venue is proper in the District of Nebraska because Defendants caused harm to Plaintiffs in Nebraska through their commission of intentional torts that took the form of online speech.

As relevant here, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. 1391(b)(2).

Clement and Dew both err in assuming that because *they* were not physically present in Nebraska when they engaged in the tortious conduct at issue, the events giving rise to the claim did not occur in Nebraska. *See* ECF Nos. 34 at 11–12; 37 at 10–11. Both Defendants, however, overlook the way Section 1391(b)(2) is applied to the types of torts in which they engaged.

In *Gridiron Management Group LLC v. Wranglers*, the court concluded that venue was proper in Nebraska when the defendants "reached across state boundaries and into Nebraska by

hacking into" the plaintiffs' computers, even though the defendants were never physically present in Nebraska. No. 8:12CV2128, 2012 WL 5187839, at *6 (D. Neb. Oct. 18, 2012) (cleaned up). In so holding, the court explained that an analysis of where the events and omissions giving rise to the claim involves a consideration of both "'the place where the allegedly tortious actions occurred and the place where the harms were felt.'" *Id.* n.6 (quoting *Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 8 (D.D.C. 2009). What is more, "'[i]n the context of defamation and other non-physical torts, courts generally hold that venue under section 1391([b])(2) is proper in the district where the injured party resides and the defamatory statements were published.'" *Id.* (quoting *Capital Corp. Merch. Banking, Inc. v. Corporate Colocation, Inc.*, No.6:07-CV-1626-ORL-19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27 2008)) (some brackets in original).

*Gridiron Management Group* and the cases it cites apply here. As Plaintiffs are located in Nebraska, the harm they experienced in Nebraska is critical to the venue analysis. As non-physical torts, mainly online activity including defamatory speech, tortious interference, and trademark infringement, comprise the bulk of conduct at issue, the fact that Plaintiffs reside in Nebraska together with the fact that Plaintiffs felt the harm of Defendants' tortious conduct in Nebraska makes venue proper in this District.

### C.  All of Plaintiffs' Claims State a Claim for Relief Against Clement and Dew.

Plaintiffs state claims against Clement and Dew for tortious interference (Count I), defamation (Count II), trademark infringement (Count III), false designation of origin and unfair competition under federal and Nebraska law (Counts IV and VI), and civil conspiracy (Count VII).

To "survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585, 594 (8th Cir. 2009) (cleaned up). "The plausibility standard

requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility,'" which occurs when the complaint's "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up).

### 1. Plaintiffs satisfy basic pleading standards.

Clement and Dew both ask the Court to dismiss the FAC because it is long and because it often refers to the "Defendants" as a group. Clement and Dew are wrong on both counts.

To satisfy the "short and plain statement" requirement in Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 994 (8th Cir. 2002). Thus, even a "lengthy complaint" satisfies Rule 8(a)(2) so long as it provides the defendants with notice of the claims. *Id.*; *cf. Holmes v. Hawthrone*, No. 4:19-cv-3290-DDN, 2020WL 4220074, at *2 (E.D. Mo. July 23, 2020) (discussing a "complaint in the form of a narrative that is far too long, and brims with irrelevant and redundant information" that "makes it difficult to clearly discern plaintiff's actual claims"). The length of the FAC is a result of Defendants' extensive and well-documented misconduct; Clement and Dew clearly have notice of Plaintiffs' specifically delineated claims and the factual bases for these claims as each are set forth in specific counts in the FAC.

Nor can Clement and Dew evade liability simply because the FAC, in some places, referred to the "Defendants." In *Harrington v. Hall County Board of Supervisors*, which Clement and Dew both cite, the court granted a defendant's motion to dismiss where the plaintiff failed "allege[] any particular actions [the defendant] took to participate in . . . the purported wrongdoing." No. 4:15-CV-3052, 2016 WL 1274534, at *5 (D. Neb. Mar. 31, 2016). The FAC, however, alleges specific acts of wrongdoing unique to Clement and Dew, including specific actionable statements that they each published. *See, e.g.*, Section III.C.3, *infra*. The FAC further explains each defendant's role in

their scheme to harm Plaintiffs, including Clement's role of publishing harassing and defaming statements about Plaintiffs at a relentless pace and Dew's role as posing as someone with unique, insider knowledge about Straka. FAC ¶¶ 31–39. Once Plaintiffs have the benefit of discovery, they will be able to identify with more precision which Defendant did what (and who the non-moving Defendants are).

### 2. Plaintiffs state a claim for tortious interference.

Plaintiffs satisfy each of the elements of tortious interference as Clement and Dew participated in a scheme designed to frustrate Plaintiffs' business relationships by spreading malicious lies about them.

The elements of tortious interference are "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Koster v. P & P Enters.*, 539 N.W.2d 274. 278–79 (Neb. 1995).

Plaintiffs had business expectations in and relationships with donors, vendors, speaking engagements, and event organizers, and Defendants' online activity made clear they were aware of these relationships. FAC ¶¶ 160–61. Defendants then maliciously targeted these relationships by spreading lies about Plaintiffs to induce third parties to end their relationships with Plaintiffs. For example, Defendants targeted Plaintiffs' vendors Mailjet and Sendlane (including individual employees) by lying about Plaintiffs using these services to raise money for political violence (FAC ¶¶ 70–72) and  Plaintiffs' payment processors AllFundIt and MetroPayTech with false allegations of fraud and (again) political violence (*Id.* ¶¶ 78–87). Paragraph 88 of the FAC contains a long list of other vendors Defendant targeted. Defendants' intention is made clear by Defendant

13

@MikeClover7's tweet about Straka being banned by seven vendors, while stating that Straka uses an eighth vendor (MailJet) to "continue funding his violent extremism." *Id.* ¶ 94.

Clement and Dew participated in this reprehensible scheme. Clement targeted Straka's donors with lies about Straka's activities on January 6, 2021, Mr. Straka obtaining income by lying to the elderly (i.e., fraud), "snitching" on his "friends, followers, recruits, and funders," and using donor money to get cosmetic surgery. *Id.* ¶ 106. Dew likewise tried to interfere with one of Plaintiffs' supporters by telling lies about Straka giving up other January 6 defendants and "fighting to keep that classified." *Id.* ¶ 108.

Defendants' scheme worked: Plaintiffs have lost income and incurred injury to their business, injury to their reputation, and costs and out-of-pocket expenses as a result of Defendants' conduct. *Id.* ¶ 166.

Clement and Dew both argue that none of the tortious interference allegations relate to them. ECF Nos. 34 at 27–28 & 37 at 32. But this is plainly false: Clement targeted Straka's donors, and Dew tried to interfere with Plaintiffs' relationships with their supporters. FAC ¶¶ 106, 108. Defendants further conspired, so each Defendant faces liability under the civil conspiracy claim for the underlying tortious conduct. Plaintiffs' allegations with respect to Clement and Dew also dispel their arguments about the FAC lacking allegations regarding the specific elements of tortious interference. As explained above, Defendants, including Clement and Dew, engaged in conduct that gives rise to a tortious interference claim under Nebraska law.

Dew argues that her conduct cannot constitute actionable interference because she only spread "truthful" information about Plaintiffs. ECF No. 34 at 29. Yet Plaintiffs alleged that Dew's statement about Straka giving up January 6 defendants and fighting to keep that information

14

classified is false, which allegation the Court must accept as true.[2] FAC ¶ 108; *see also* Section III.C.3.ii, *infra*.

Clement and Dew both cite *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), suggesting that the First Amendment gives them the right to spread vicious lies about Plaintiffs because of the consumer's right to boycott. ECF Nos. 34 at 29 & 37 at 33. In applying *Claiborne Hardware*, however, courts distinguish between "political speech designed to secure governmental action to vindicate legitimate rights" and "private communications in the context of a private dispute": "the safe harbor carved out by *Claiborne Hardware* for certain boycott activity is unavailable" for the latter category. *See Jews for Jesus, Inc. v. Jewish Comm'y Relations Council of New York, Inc.*, 968 F.2d 286, 298 (2d Cir. 1992). Dew and Clement were not agitating for governmental action or the protection of civil rights when they targeted Plaintiffs; they were trying to destroy Plaintiffs' private economic relationships and opportunities. *Claiborne Hardware* therefore provides Clement and Dew no license to engage in tortious interference.

### 3.   Plaintiffs state a claim for defamation.

Clement and Dew are liable to Plaintiffs for publishing malicious lies about them.

"A defamation claim has four elements: (1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Choice Homes, LLC v. Donner*, 976 N.W.2d 187, 202–03 (Neb. 2022) (footnote omitted). "[A] public-figure plaintiff must also prove by clear and convincing evidence that the defendant acted with actual malice-that

---

[2] The Court can further take judicial notice of the fact that Straka requested that the Court unseal filings in his criminal case and did not oppose the government's efforts to unseal filings. *See United States v. Straka*, 1:21-cr-00579-DLF (D.D.C.), ECF Nos. 54 & 56.

is, that the defendant made false remarks with a high degree of awareness of probable falsity, or that the defendant entertained serious doubts as to the truth of his publication." *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001) (citations omitted). Plaintiffs do not dispute that they are public figures.

Although Plaintiffs specifically reference Defendants' defamatory statements in paragraph 178 of the FAC, both Clement and Dew rely on generic arguments that fail to grapple with each of their defamatory statements about Plaintiffs.

### i.   Clement defamed Plaintiffs at least fifteen times.

Clement defamed Plaintiffs when he published posts on X that:

- Described Straka as a "coke addict." FAC ¶ 178(D).

- Described Straka as a "January 6 felon convict (who informed his way out of prison time)." *Id.* ¶ 178(F).

- Accused Straka of having "handed over details about his followers and funders to the fbi as part of his plea deal to avoid prison time for the crimes he filmed himself commit." *Id.* ¶ 178(G).

- Accused Straka of having "literally filmed himself commit . . . a felony in a restricted area during a violent riot." *Id.* ¶ 178(H).

- Accused Straka of having "filmed himself commit a felony outside the building." *Id.* ¶ 178(I).

- Accused Straka of "demonstrating with Gavin Crowl the child molester on #J6." *Id.* ¶ 178(J).

- Stated that "Alex Jones gave [Straka] money to start a completely fake 'movement' [#WalkAway]." *Id.* ¶ 178(L).

16

- Accused Straka of having been "hired by Alex Jones to speak against LGBTQ people so maga bigots can pretend they have an ally." *Id.* ¶ 178(M).

- Describing Straka as a "gay man who gets paid to spread disgusting and violence inciting lies about LGBTQ people." *Id.* ¶ 178(Q).

- Accusing Straka of having "snitched on friends to avoid prison and hire[d] holocaust deniers to pretend they used to be Dems." *Id.* ¶ 178(R).

- Stating that there are "holocaust deniers who Brandon Straka hired to pretend they used to be Democrats[.]" *Id.* ¶ 178(S).

- Accusing Straka of "getting caught faking his walkaway videos, like these holocaust deniers he hired 2B former Dems[.]" *Id.* ¶ 178(T).

- Stating that "Alex Jones gave [Straka] the start up money[.]" *Id.* ¶ 178(W).

- Stating that "walkaway was a fake org that Russian bots, and others for hire, helped prop up like it was a real thing and not just a slushfund for a convict turned fbi-informant." *Id.* ¶ 178(X).

- Stating that Straka's "body county is impressive" and that he is "responsible for a lot of death." *Id.* ¶ 178(Y).

Clement's arguments regarding the defamation claim fail to address each of these statements, and they further lack legal merit.

***First***, Clement argues that some of his statements were outside the one-year statute of limitations. ECF No. 37 at 23–24. Notably, Clement ignores the allegations in paragraph 178, focusing only older statements that were alleged in the FAC for other reasons. Apart from the posts in sub-paragraphs W, X, and Y, each of the posts are, on their face, within the one-year statute of the limitation. And Plaintiffs alleged that these three posts were published on an unknown date

believed to be within the statute of limitations. With respect to the undated statements, Clement argues only that they "may also be outside of the statute of limitations." ECF No. 37 at 24. Speculation is insufficient on a motion to dismiss. *See Winslow v. Smith*, 672 F. Supp. 2d 949, 962 n.5 (D. Neb. 2009) (explaining that a motion to dismiss based on the statute of limitations is proper "when it appears from the face of the complaint itself that the limitation period has run") (cleaned up). Each of Clement's statements in paragraph 178 occurred within the limitations period.

***Second***, Clement argues that his statements were mere protected opinion, and not defamatory statements of fact.[3] ECF No. 37 at 24–30. Yet in making this argument, Clement relies on a cherry-picked, strawman version of the FAC, ignoring the fifteen discrete defamatory statements in paragraph 178. Each of Clement's statements included "'[o]bjective expressions of verifiable fact,'" which renders them "actionable." *Starks v. TULA Life, Inc.*, -- F.3d ---, 2023 WL 4763829, at *3 (D. Neb. July 26, 2023). The following are factual propositions that can and will be proven false: whether Straka is addicted to cocaine (FAC ¶ 178(A)); whether Straka committed and/or was convicted of a felony (*id.* ¶¶ 178(F, H, I)); whether Straka provided information about his "followers and funders" to the FBI to avoid prison time (*id.* ¶ 178(G)); whether Straka demonstrated with a certain child molester on January 6 (*id.* ¶ 178(J)); whether Plaintiffs received their initial funding from Alex Jones (*id.* ¶¶ 178(L, M, W), whether Straka is paid to lie and incite violence against LGBTQ people (*id.* ¶¶ 178(M, Q); whether Plaintiffs hired Holocaust deniers to pretend to be former Democrats (*id.* ¶¶ 178(R, S, T); whether Walkaway Foundation is a fake

---

[3] Clement also states that Plaintiffs "cannot establish actual malice," ECF No. 37 at 24, but Clement never expands on this throwaway argument. Plaintiffs included a detailed actual malice allegation showing why Clement and the other Defendants knew their statements were false, FAC ¶ 186, so the Court should disregard Clement's erroneous and unsubstantiated assertion that Plaintiffs failed to plead actual malice.

organization propped up by Russian "bots" that Straka uses as a "slushfund" (*id.* ¶ 178(X)); and whether Straka is responsible for the deaths of multiple people. *Id.* ¶ 178(Y).

In the face of these specific allegations of provable falsehoods, Clement resorts to mischaracterizations of the FAC. Clement argues that his statements about Straka being a "racist" and a "grifter" are protected opinion, ECF No. 37 at 28, but these (also false) statements are not the basis for Plaintiffs' defamation claim. Clement argues that Straka did indeed cooperate with the government, but nothing in the extrinsic evidence Clement attached to his opposition indicates that he provided information about Plaintiffs' *followers and funders* to avoid prison time, as Clement claimed. *See* FAC ¶ 178(G); ECF No. 38-2. Clement argues that his statements about Straka's criminal record are true, but Clement specifically accused Straka of being a convicted felon, which Clement's own evidence contradicts. *See* FAC ¶¶ ¶¶ 178(F, H, I); ECF No. 38-2; *see also* FAC ¶ 131 (the prosecution admitting that it lacked information sufficient to charge Straka with a felony).

**Third**, Clement argues that Plaintiffs neither allege special damages nor meet the standard for defamation *per se*. ECF No. 37 at 30–31. Plaintiffs satisfy the damages element because Clement's speech was defamatory *per se*. "Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one." *DatabaseUSA.com LLC v. Spamhaus Project*, No. 8:19CV423, 2020 WL 2126448, at *3 (D. Neb. May 5, 2020). The false imputation of a crime occurs when the crime is "(a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Norris v. Hathaway*,

561 N.W.2d 583, 548–49 (Neb. Ct. App. 1997) (quoting *Hruby v. Kalina*, 424 N.W.2d 130, 132 (1988)).

Here, Clement falsely accused Straka not only of being a felon, which, by definition, carries prison time. *See* 18 U.S.C. § 3559(a). Clement further accused Straka of being a cocaine addict, which implies that Straka possessed cocaine in violation of 21 U.S.C. § 844, which also carries a potential sentence of imprisonment, along with being responsible for multiple deaths, which implies the commission of manslaughter or worse. The remainder of Clement's defamatory statements about Straka constitute defamation *per se* because of their false claims about Straka's work with WalkAway Foundation would naturally injure Straka in his profession. Clement's statements that Plaintiffs were funded by Alex Jones; that Straka is paid to lie and incite violence against LGBTQ people; that Straka hires Holocaust deniers in the course of his work; and that Walkaway Foundation is "fake" and propped up by Russian "bots," all of which would "adversely affect [Plaintiffs'] fitness for the proper conduct of [their] lawful business[.]" Restatement (Second) Torts § 573 (1977); *see also Hruby*, 424 N.W.2d at 132 (citing the Restatement in examining what constitutes defamation *per se*). Plaintiffs are therefore relieved of their obligation to plead special damages, though they could do so in an amended complaint if necessary.

### ii.   Dew defamed Plaintiffs at least five times.

Dew defamed Plaintiffs when she published posts on X that:

- Accused Straka of having "[given] up other Jan 6 defendants and is currently fighting to keep that classified." FAC ¶ 178(A).

- Accused Straka of having "stood up for a guy that kicked a dog down the stairs" and "advocating for people that murder dogs." *Id.* ¶ 178(B).

- Stated that "walk away hasn't caused anyone to switch [political parties]." *Id.* ¶ 178(N).

20

- Stated that Straka was "[n]ot even allowed near the [scissors]" when he worked as a hair stylist." *Id.* ¶ 178(O).

- Stated that Straka "blocked [her] on Twitter for mentioning one of his DWI arrests[.]" *Id.* ¶ 178(P).

Like Clement, Dew attacks only a strawman version of Plaintiffs' claim rather than contend with the actual defamatory statements alleged in the FAC. Notably, Dew does not dispute the actual malice element, which speaks volumes about her state of mind while defaming Plaintiffs.

**First**, Dew argues that with "limited exceptions," Plaintiffs' defamation claim is time-barred. ECF No. 34 at 21. The statements in sub-paragraphs 178(O, N, & P) were each published in 2023, so these statements are indisputably within the one-year limitations period. The remaining statements are outside of the one-year statute of limitations period, but Plaintiffs alleged that they did not discover these posts until late 2023. FAC ¶¶ 178(A & B).

Dew argues that the discovery rule does not apply to intention torts, and even if it did, Plaintiffs would have discovered the posts within the limitations period with reasonable diligence because of the nature of Defendants' cyberstalking and harassment campaign. ECD No. 34 at 21 n. 3. When the defendant fraudulently conceals their libelous speech, the statute of limitations is tolled until the plaintiff discovers the publication. *See Patterson v. Renstrom*, 195 N.W.2d 193, 194 (Neb. 1972). The Court is bound by Plaintiffs' allegation that they did not discover the first two statements until late 2023, and it is plausible discovery will show fraudulent efforts on Dew's part to conceal these statements.

**Second**, Dew argues that her posts in sub-paragraphs 178(A & P) are not defamatory because they are true, but she is wrong on both counts. ECF No. 34 at 22–23. Even if the Court considers Dew's extrinsic evidence that Straka provided assistance to the government, none of that

evidence indicates that he tried to keep that information "classified." *See* ECF No. 35-2. The defamatory 'sting" of this false allegation is that Straka somehow tried to conceal information from the public regarding his prosecution, which is false.

Dew further argues that her statement about Straka's "DWI arrests" (plural) was true because Straka was charged with a DUI in 1998. ECF No. 34 at 22–23. Dew's statement remains false as Straka was not arrested multiple times for DWI as her post indicates. FAC ¶ 178(P).

**Third**, Dew argues that her remaining statements about Plaintiffs constitute opinion. ECF No. 34 at 23–26. But once again, Dew ignores Plaintiffs' actual defamation claim, focusing only on statements that appear elsewhere in the Complaint. The statements in sub-paragraphs 178(B. N, & O) contain provably false assertions of fact, and nothing in Dew's motion indicates otherwise.

**Fourth**, Dew argues that Plaintiffs failed to plead defamation *per se* and/or special damages. ECF No. 34 at 26–27. Three of the defamatory statements at issue are defamatory per se. FAC ¶¶ 178(N–P). Dew's statement that "walk away hasn't caused anyone to switch" political parties defames all three Plaintiffs in their profession: causing "Democrats to leave the party" is "#Walkaway's core mission," FAC ¶ 186, so Dew's statement falsely implies a complete failure of Plaintiffs' professional mission. Likewise, Dew's false statement that Straka was not allowed near scissors when he was a hairdresser falsely implies that he was deficient in that profession. Both statements imply that Plaintiffs are unfit in their chosen professions. Restatement (Second) Torts § 573; *see also Hruby*, 424 N.W.2d at 132.

Finally, Dew's statement that Straka was arrested multiple times for DWI implies that Straka engaged in this offense at least two times, which is false. In addition, a repeat DWI offense subjects the defendant to potential imprisonment. *See* Neb. Rev. Stat. § 60-6,197.03(3).

Plaintiffs can further amend the FAC to allege special damages flowing from Dew's statements.

Dew also argues that Plaintiffs did not allege that they demanded a retraction and correction within twenty days of each publication, which bars them from recovering anything other than actual damages, unless they can prove actual malice. ECF No. 34 at 26 n.4; Neb. Rev. Stat. § 25-840.01. The "unless" clause vitiates Dew's argument: Plaintiffs alleged actual malice, FAC ¶ 186, which Dew does not dispute in her motion.

### 4. Plaintiffs state claims for trademark infringement under federal and Nebraska law.

Defendants misappropriated Plaintiffs' #WALKAWAY trademark in order to harm Plaintiffs, which gives rise to Plaintiffs' claims for trademark infringement in violation of 15 U.S.C. § 1114; false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); and false designation of origin and unfair competition in violation of Nebraska law. As Clement and Dew group these claims together in their motions, Plaintiffs will follow suit here.

To state a trademark infringement claim, the plaintiff must show that the defendant's use of the plaintiff's trademark creates a likelihood of confusion among consumers. *ConAgra, Inc. v. George A. Hormel, & Co.*, 990 F.2d 368, 369 (1993). The elements for the false designation of origin and unfair competition claims are substantially identical. *See Comm'y of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011); *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 398 n.1 (8th Cir. 1987). Plaintiffs' trademark claims out of Defendants' maintenance of www.WalkAwayPac.com to lure members of the public trying to access Plaintiffs' true website, www.WalkAwayPac.org.

*First*, Clement and Dew argue that Plaintiffs lack standing to bring these claims because they are not the owner of the trademark or its exclusive licensee. ECF Nos. 34 at 14–15 & 37 at

23

14–16. Plaintiffs alleged that the #WALKAWAY trademark was licensed to them in connection with their activities related to the #Walkaway campaign. FAC ¶ 199. Plaintiffs further explain that Straka operates the #WalkAway Campaign through the Walkaway PAC and the Walkaway Foundation. *Id.* ¶ 1. These allegations thus demonstrate that Plaintiffs, acting collectively, hold the exclusive license to use the #WALKAWAY trademark. To the extent WalkAway Campaign LLC is required to join this action for Plaintiffs to assert their trademark claims, this entity can readily be joined as a plaintiff in an amended complaint.

**Second**, Clement and Dew argue that Plaintiffs failed to allege that Plaintiffs used the trademark in commerce. ECF Nos. 34 at 15–17 & 37 at 17–18. In the context of a trademark dispute related to political advocacy, the Second Circuit explained that the "'use in commerce' [requirement] reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause, rather than to limit the Lanham Act to profit-seeking uses of a trademark." *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92 (2d Cir. 1997). Dew concedes that "raising money" would constitute a sufficient jurisdictional hook, and she is correct. ECF No. 34 at 17; *see Valley Forge Military Acad. Found. V. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 456 (E.D. Pa. 2014) (collecting cases in which the term "services" is construed broadly in the context of the Lanham Act's "use in commerce" requirement, including soliciting donations). The Court may thus take judicial notice of www.walkawaypac.org, which has a prominent section that solicits donations, thereby satisfying the use in commerce requirement.

**Third**, Clement and Dew argue that Plaintiffs failed to establish "likelihood of confusion" with respect to their use of the #WALKAWAY trademark. ECF Nos. 34 at 17–19 & 37 at 19–21. "For violations of the Lanham Act, the Eighth Circuit employs a six-factor test to evaluate whether

there is a likelihood of confusion, including, (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase." *Tecumseh Poultry LLC v. Perdue Holdings, Inc.*, No. 4:12CV3032, 2012 WL 3018255, at *4 (D. Neb. July 24, 2012) (quoting *Sensient Technologies Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010)). While Clement and Dew try to apply these factors, they are "generally too fact-dependent to offer much guidance" at the motion to dismiss phase. *Id.* Motions to dismiss are generally only appropriate "for example, where the goods are unrelated as a matter of law, and thus no confusion is likely." *Id.* (citation omitted). Clement and Dew cannot meet this high bar as the sham website uses the Walkaway name and a very similar web address with pictures of Straka and other #Walkaway employees: there is no credible argument that the true website and the false one are unrelated as a matter of law. As Plaintiffs explained, the purpose of the sham website is to lure and confuse members of the public who enter the wrong domain name. FAC ¶ 203. The only question, therefore, is the extent of the likelihood of confusion, not its existence.

### 5. Plaintiffs state a claim for civil conspiracy.

Clement, Dew, and the other Defendants' collaborative efforts to harm Plaintiffs make them liable for civil conspiracy. "A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means." *Koster v. P & P Enters, Inc.*, 539 N.W.2d 274, 279 (Neb. 1995) (citation and internal quotation marks omitted).

25

Clement and Dew both argue that Plaintiffs' civil conspiracy claim fails because there is no underlying tort. ECF Nos. 34 at 29–30 & 37 at 34. This argument lacks merit as Plaintiffs have alleged multiple colorable tort claims against Clement and Dew, as explained above.

Clement makes the additional argument that "Plaintiffs have failed to assert any factual allegations against . . . Clement with regard to the civil conspiracy claim." ECF No. 37 at 34. But this false—Plaintiffs alleged that the Defendants worked in concert to engage in wrongdoing and that Clement's role in the conspiracy includes publishing defamatory statements about Plaintiffs (likely through anonymous X accounts as well as his own account) and identifying events or opportunities associated with Plaintiffs so Defendants can collectively interfere with the same. FAC ¶¶ 31–48.

### D.  Any Dismissal Should Be with Leave to Amend.

Neither Clement nor Dew provided the Court with any compelling reason to dismiss the FAC. Nonetheless, if the Court is inclined to grant either motion in part or in whole, Plaintiffs request leave of Court to file a Second Amended Complaint to cure any defects. *See Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) ("Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving [party], futility of amendment, or unfair prejudice to the non-moving party can be demonstrated." (citations omitted)).

///

///

26

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Clement and Dew's respective motions to dismiss. To the extent the Court grants either motion in whole or in part, Plaintiffs request leave to file a Second Amended Complaint.

Dated: May 13, 2024

PLAINTIFFS BRANDON STRAKA,
WALKAWAY CAMPAIGN PAC, AND
WALKAWAY FOUNDATION

By: /s/ Ronald D. Coleman
Ronald D. Coleman*
Dhillon Law Group Inc.
50 Park Place, Suite 1105
Newark, NJ 07102
(973) 498-1723
rcoleman@dhillonlaw.com

Jesse D. Franklin-Murdock*
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700
jfranklin-murdock@dhillonlaw.com

William F. McGinn
McGinn Law Firm
20 North 16th Street
Council Bluffs, IA 51501
(712) 328-1566
bmcginn@mcginnlawfirm.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with Nebraska Local Rule 7.1(d)(1)(B). The brief contains 8188 words, inclusive of the caption, signature block, and certificate of compliance.

/s/ Ronald D. Coleman
Ronald D. Coleman