IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRANDON STRAKA, WALKAWAY | ) | CASE NO. |
| CAMPAIGN PAC, and WALKAWAY | ) | 8:24-CV-00024-JFB-SMB |
| FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT CLEMENT'S BRIEF IN** |
| | ) | **RESPONSE TO PLAINTIFF'S** |
| DAVID S. CLEMENT, | ) | **OPPOSITION TO DEFENDANT'S** |
| @BRAWNDOSNITCHKA, | ) | **MOTION TO DISMISS** |
| @CHICHIVISION18, | ) | |
| @MIKECLOVER7, @STONEPGH, | ) | |
| THATSQUITEAWALK, | ) | |
| @HIGHENANONTOO, @TOOLEJK | ) | |
| *and* @ZIBTARA *a/k/a* MIRANDA DEW | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Defendant David S. Clement and submits this reply to Plaintiff's Brief in Opposition to Defendants Clement and Dew's Motions to Dismiss.

## INTRODUCTION

Defendants Clement and Dew have now filed and briefed Motions to Dismiss twice since the inception of the subject suit. (Clement Motion to Dismiss March 25, 2024 ("Clement MTD 1"), ECF No. 22; Brief in Support of Clement MTD 1, ECF No. 23; Dew Motion to Dismiss March 18, 2024 ("Dew MTD1"), ECF No. 19; Brief in Support of Dew MTD 1, ECF No. 20; Clement Motion to Dismiss April 22, 2024 ("Clement MTD 2"), ECF No. 36; Brief in Support of Clement MTD 2, ECF No. 37; Dew Motion to Dismiss April 22, 2024 ("Dew MTD 2"), ECF No.

1

33; Brief in Support of Dew MTD 2, ECF No. 34). In response to the first motions to dismiss filed by Defendants Clement and Dew, Plaintiffs filed an Amended Complaint, as was their right under the Federal Rules. (First Amended Complaint, ECF No. 29).  However, Plaintiffs' amendment did nothing to cure the defects of their original Complaint, of which they were on notice due to the initial motions to dismiss filed by Defendants Clement and Dew. Plaintiffs now resist the second motions to dismiss of Defendants Clement and Dew and seek the opportunity to file a *second* amended complaint to fix the issues they should have fixed the first time around. Plaintiffs are once again grasping at straws to save a baseless lawsuit against individuals who speak out about Mr. Straka and his involvement in the January 6, 2021, attack on the United States Capitol. The Motion to Dismiss of Defendant Clement should be granted for the reasons identified in Defendant's Brief in Support his Motion to Dismiss and this reply brief.

## RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

As with the Complaint and First Amended Complaint, Plaintiffs' Statement of Facts once again frequently lumps all defendants in this action together, without providing any basis of support for doing so. Moreover, the Statement of Facts is a self-serving retelling of the First Amended Complaint and does nothing to clarify or remedy the morass that is the First Amended Complaint.

Plaintiffs take issue with Plaintiff Straka being identified as an "accused domestic terrorist." The United States Federal Government, however, clearly views the events of January 6, 2021, at the United States Capitol as an act of domestic terrorism, without regard to whether

2

the individuals participating went inside the building or not. *See U.S. Department of Justice FY*

*2022 Budget Request Addressing Domestic Terrorism*, U.S. Department of Justice,

https://www.justice.gov/jmd/page/file/1398831/dl#:~:text=The%20January%206%2C%202021%20

assault,complex%20charges%20such%20as%20conspiracy (last visited May 20, 2024)("The

January 6, 2021, assault on the Capitol is but the most recent and visible example of the DT

threat."). The events at the Capitol on January 6, 2021, were described by Christopher Wray,

Director, Federal Bureau of Investigation, on June 15, 2021, as acts of terrorism, including the act

of breaching the security barricades outside of the U.S. Capitol complex. Christopher Wray,

*Examining the January 6 Attack on the U.S. Capitol,* FBI (Jun. 15, 2021)

(https://www.fbi.gov/news/testimony/examining-the-january-6-attack-on-the-us-capitol-wray-

061521).


## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction Over Defendant Clement.

Plaintiffs cannot and have not established personal jurisdiction over Defendant Clement.

The parties generally agree as to some of the foundational tests with regard to jurisdiction in

that the parties agree that: it is Plaintiffs' burden to make a prima facie showing that personal

jurisdiction exists; Nebraska's long-arm statute extends jurisdiction over nonresident

defendants to the fullest degree allowed by the Due Process Clause of the United States

Constitution; and the "effects test" applies where intentional torts are involved.  Yet, Plaintiffs

conveniently ignore the guidance provided by the Eighth Circuit and the United States

Supreme Court that the proper focus of the inquiry is whether the defendant's conduct connects him to the forum itself in a meaningful way rather than the people in the forum state. *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020).

Plaintiffs cite to *Venteicher v. Smyrna Air Ctr., Inc.*, No. 8:09CV272, 2009 U.S. Dist. LEXIS 97808 (D. Neb. Oct. 8, 2009) in support of their position. In applying the effects test in *Venteicher*, the District of Nebraska noted that contacts by phone, mail, or e-mail were insufficient to justify the exercise of personal jurisdiction under the due process clause. *Id.* at *12. Even where there are frequent communications, the Court noted that those would have to be taken together with "some other action directed toward the forum state" to *possibly* help establish minimum contacts. *Id*. Here, Plaintiffs accuse Defendant Clement of tweeting about Plaintiff Straka and allegedly contacting Plaintiff's Straka's probation officer in Nebraska. (First Am. Complaint ¶29, ECF No. 29). Defendant Clement's tweets were made on the internet on the world-wide platform of Twitter; they were not directed or sent to Nebraska specifically. While Defendant expressly and vehemently denies he made any efforts to contact Plaintiff Straka's probation officer in Nebraska, even if he had, such contacts, without other actions directed toward the forum state (the state of Nebraska, not Mr. Straka), would be insufficient for this court to find personal jurisdiction over Defendant Clement.

Interestingly, Plaintiffs also cite the case of *HVLP02, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097 (D. Neb. 2016) and provide a passage that supports Defendant Clement's case rather than Plaintiffs'. Like in the *Oxygen Frog, LLC* case, nothing about the tweets issued by Defendant Clement specifically was directed at or toward Nebraska residents generally; the

statements do not mention Nebraska; the statements generally do not rely on Nebraska sources; the tweets do not relate to events that took place in Nebraska. Defendant Clement's tweets produced and cited by Plaintiffs, are not focused on Nebraska; they are focused on Plaintiff Straka, the events of January 6, 2021, in Washington D.C., and issues of national politics, not politics specific to Nebraska.  (Exhibit to First Am. Complaint, ECF. No. 29-1).  Nothing about Plaintiffs' allegations or the tweets produced by Plaintiffs reflect an effort to harm Plaintiff's reputation specifically with Nebraska residents or to direct any activity directly toward the State of Nebraska.

Plaintiffs assert, without any support or citation to the record in any way, that Defendants sought to disrupt the WalkAway Foundation's Nebraska chapter. Nothing in the tweets produced or allegations in the First Amended Complaint, reference the Nebraska chapter of the WalkAway Foundation.   Additionally, Plaintiffs quote *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070 (8th Cir. 2004) about court entitlement to presume jurisdiction in a diversity action, but Plaintiffs have not previously asserted jurisdiction in this action on the grounds of diversity jurisdiction and should not be allowed to now. Jurisdiction is not proper and Plaintiffs' claims against Defendant Clement should be dismissed.

## II.     Venue Is Not Proper in Nebraska.

As with personal jurisdiction, Plaintiffs overlook the relevant case law with regard to venue, requiring the inquiry to be into "the relevant activities of the defendant in the forum state, not the effect of the activities on the plaintiff in the forum state." *Steen v. Murray*, 770 F.3d 698 (8th Cir. 2014). Plaintiffs continue to focus on Plaintiff Straka having felt the alleged harm in

5

Nebraska. As discussed above, even if Defendant Clement had contacted Plaintiff Straka's probation officer, which he expressly denies, such action is insufficient to establish Defendant Clement as having acted within the forum state of Nebraska. Plaintiff relies upon *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12CV3128, 2012 U.S. Dist. LEXIS 150020, *16 (D. Neb. Oct. 18, 2012), a case in which someone hacked into that plaintiff's computers, which were physically in Nebraska. Such an intrusion is highly distinguishable from tweeting. Defendant Clement did not electronically or physically intrude upon Plaintiffs' devices in Nebraska. The tweets were published generally online and not specifically in a Nebraska forum. Defendant Clement did not, for example, write to a Nebraska news publication and have his statements published there.  Defendant Clement did not hack into Plaintiff Straka's computer, iPad, or phone, and leave messages for him there. While *Gridiron Mgmt. Grp. LLC* does provide some guidance in this matter, the guidance is not in support of finding venue in Nebraska, but quite the opposite, particularly when viewed under the appropriate lens of evaluating the activities of the defendant in the forum state, not the effect of the activities on the plaintiff.

The scope of venue argued by Plaintiff is not supported by law, statute, or logic. The Federal Rules limit venue for a reason. Yet, Plaintiffs argue for an extremely broad interpretation of the venue statutes. They conclude the section on venue arguing that because Plaintiffs are located in Nebraska (which, to Defendant Clements' knowledge is not accurate beyond Plaintiff Straka residing in Nebraska as the other Plaintiffs are not based in Nebraska), and Plaintiffs "felt the harm" of the allegedly tortious conduct in Nebraska, that venue is proper. (Plaintiffs' Combined Brief in Opposition p. 11, ECF No. 40). Essentially, Plaintiffs argue that venue should be found wherever a tweet is read or wherever a Walkaway Foundation has a

chapter, even if the tweet was published on a world-wide accessible website. The law and statutes do not condone such a broad view and such a broad view of venue should not be accepted here.

For these reasons and the reasons presented in Defendant Clement's Brief in Support of his Motion to Dismiss, Venue is not proper in Nebraska and Plaintiffs' claims against Defendant Clement should be dismissed under Fed. R. Civ. P. 12(b)(3).

**III.   Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.**

**A. Plaintiffs fail to meet basic pleading standards.**

Plaintiffs are required by the Federal Rules of Civil Procedure to provide a pleading that contains "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); this Plaintiffs have not done, and their First Amended Complaint should be dismissed. Defendant Clement's issues with Plaintiffs' First Amended Complaint are not as Plaintiffs describe, because it is long and often refers to Defendants as a group. Rather, Defendant Clement's issues with Plaintiffs' First Amended Complaint are, among other things, that the complaint identified multiple broadly-stated charges against multiple defendants with no effort to parse out what each defendant did or the basis therefore, and that the complaint is long-winded with non-specific complaints, full of naked assertions, devoid of factual enhancements which do not take the claims from conceivable to probable. Moreover, the claims fail to distinguish which Plaintiff is bringing which claim and the majority of the First Amended Complaint appears to be focused on Plaintiff Straka and the alleged harm he suffered. There is no way of knowing which Plaintiffs bring which claims and which allegations are directed at

which Defendant. Incriminatingly, Plaintiffs essentially admit that they do not have the basis for some of the assertions made in the First Amended Complaint; stating "[o]nce Plaintiffs have the benefit of discovery, they will be able to identify with more precision which Defendant did what (and who the non-moving Defendants are)." (Plaintiffs' Brief in Opposition, p. 13, ECF. No. 40). In other words—Plaintiffs do not even know if Defendant Clement did what they allege he did in the broadly pleaded statements lumping Defendant Clement with all other defendants. The First Amended Complaint does not comport with basic pleading requirements and should be dismissed.

### B.  Plaintiffs fail to state a claim for tortious interference.

Not only can Plaintiffs not satisfy each element of tortious interference, as addressed in Defendant Clement's Brief in Support of his Motion to Dismiss, but Plaintiffs have failed to plead or even identify facts which are lodged specifically against Defendant Clement with regard to the tortious interference claim.  Plaintiffs cite paragraphs 106 and 108 of the First Amended Complaint as support for tortious interference claims against Defendant Clement and Dew. (Plaintiffs' Brief in Opposition, p. 14, ECF No. 40). Those paragraphs are not within the paragraphs of Count I, nor do those paragraphs contain specific or supported instances of Defendants Clement and Dew trying to interfere with Plaintiffs' relationships with supporters. Paragraph 106 states, in part, "Clement also told Mr. Straka's supporters and donors the following lies via Twitter. . ." but the "supporters" were not identified nor was it explained how Clement supposedly directly told this to Mr. Straka's (not all Plaintiffs') supporters. None of the numerous tweets cited by or produced by Plaintiffs reflect any instance of Defendant Clement

contacting the vendors, event organizers, Mr. Straka's speaking engagements, or anything of the like. Plaintiffs' allegations are insufficient to support a claim for tortious interference.

**C. Plaintiffs fail to state a claim for defamation as the subject tweets are not defamatory.**

The tweets specified by Plaintiffs in paragraph 178, specifically, and throughout the First Amended Complaint are not defamatory as the statements each fall within non-defamatory categories: truth, opinion, rhetorical hyperbole, or words recognized by courts as non-defamatory. Contrary to Plaintiffs' assertions, Defendant Clement did not ignore the allegations contained in paragraph 178 to focus on only "older statements that were alleged in the FAC for other reasons." (Plaintiffs' Brief in Opposition p. 17, ECF No. 40). Defendant Clement addressed the categories of tweets presented throughout the First Amended Complaint, including paragraph 178, as paragraphs 31 through 158 of the First Amended Complaint are "Allegations Relating to All Claims," which Defendant Clement interpreted, in an abundance of caution, to mean were the basis, at least in part, for Plaintiffs' defamation claims. Plaintiffs now claim these other tweets/allegations outside of paragraph 178 are "not the basis for Plaintiffs' defamation claim." (Plaintiffs' Brief in Opposition p. 19, ECF No. 40). Defendant Clement would note that this further supports the argument that Plaintiffs' First Amended Complaint fails to meet basic pleading standards; Defendant Clement is and was unable to identify the claims being asserted against him and the basis therefore.

Many of the statements Plaintiffs take issue with relate to the word "felony." However, this challenge by Plaintiffs to the nature of the offenses with which Mr. Straka was initially

charged attempt to escape the fact that he was, indeed, charged with at least one crime which could constitute a felony, including 18 U.S.C. 231(a)(3)- impeding law enforcement officer during civil disorder, which is punishable by over one year of imprisonment. (Criminal Complaint Exhibit A, p. 1 to Declaration of Leslie S. Stryker Viehman, ECF No. 38-2).  Plaintiff Straka filmed himself outside of the United States Capitol and the video includes Plaintiff Straka yelling for people to take an officer's protective shield.  (Criminal Complaint Exhibit A to Declaration of Leslie S. Stryker Viehman, ECF No. 38-2).   Therefore, Plaintiff Straka filmed himself committing what was charged as a felony and there is truth to the statements asserted. True statements are not defamatory.

With regard to comments regarding Plaintiff Straka's drug use, Plaintiff Straka has openly admitted on Twitter to a past that included "years of destructive abuse of cocaine and alcohol." Brandon Straka (@BrandonStraka) X.com (Jan. 18, 2024, 6:56 p.m., https://x.com/BrandonStraka/status/1748147426995655075). Plaintiff Straka himself has tied himself to use of the illegal drug; it was not Defendant Clement who tied Plaintiff Straka's name to cocaine in the first instance. In the criminal case against Plaintiff Straka for his actions on January 6, 2021, his attorney, in his Sentencing Memorandum filed January 20, 2022, references Plaintiff Straka's prior cocaine use and that Plaintiff "has been very open about his struggles in this arena. . ." (*United States of America v. Brandon Straka*, 1:21-cr-00579-DLF, Defendant's Sentencing Memorandum, January 20, 2022, ECF Doc. 43, United States District Court for the District of Columbia). Again, there is truth to the statements asserted and the statements cannot be defamatory.

Tweets regarding Plaintiff Straka's use of funds and donations to make himself richer are nondefamatory as recognized by the court in *Broughty v. Bouzy*, No. CV2226458SDWJRA, 2023 U.S. Dist. LEXIS 136681, *6 (D.N.J. Aug. 7, 2023). Moreover, such comments were made as part of a purported Twitter exchange, are opinion and thus not defamatory. Just because a comment or statement is unflattering does not make a term defamatory. *Tate v. Bradley*, 837 F.2d 206, 208 (5th Cir. 1988). This was discussed in more detail in Defendant Clement's initial brief in support of his Motion to Dismiss. (Brief in Support of Clement MTD 2, p. 25-26, ECF No. 37).

Plaintiff Straka challenges the statements made about associations with a child molester. The Government's Sealed Supplement to Sentencing Memorandum clearly states that Plaintiff Straka identified Gavin Growl as participating along with him in the January 6th events at the Capitol and that "Straka's information is beneficial in that Crowl was not previously identified by the FBI prior to Straka's identification of Crowl." (Sealed Supplement p. 7, Exhibit D to Declaration of Leslie S. Stryker Viehman, p. 7, ECF No. 38-2). Public records in the forms of Nebraska court records and the Nebraska Sex Offender Registry identify Gavin Crowl of Sexual Assault of a Child. Mr. Crowl is a convicted sex offender relating to acts against a child and was identified by Plaintiff Straka as having participated along with Straka at the January 6th events at the Capitol. Like with so many of the other comments asserted, comments regarding Straka demonstrating with someone who sexually assaulted a child are grounded in truth and thus not defamatory.

Similarly, Plaintiff Straka himself has admitted that InfoWars' Alex Jones donated funds to Plaintiff Straka's GoFundMe page for "#WalkAway Campaign Startup Costs" and the

GoFundMe page reflects Alex Jones' contribution. Tim Fitzsimons, *Meet Brandon Straka, a gay former liberal encouraging others to #walkaway from Democrats*, NBC News (Aug. 21, 2018, 10:43 a.m.)https://www.nbcnews.com/feature/nbc-out/meet-brandon-straka-gay-former-liberal-encouraging-others-walkaway-democrats-n902316; GoFundMe, https://www.gofundme.com/f/walkaway-campaign-startup-costs?modal=donations&tab=top (last visited May 20, 2024). Again, such statements are based in truth and not defamatory.

Statements made expressing opinion, truth, and rhetorical hyperbole are well established as not defamatory. That is what we have here in each instance of the allegedly offending tweets put forth by Plaintiffs. Moreover, it is important to recognize the context in which these statements were made: Twitter—an online forum. Courts have protected statements made in online forums as statements of opinion rather than fact and Twitter specifically has been recognized in the context of defamation cases to be "a public forum where a reasonable reader will expect to find many more opinions than facts." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners, LLC*, 1151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015); *Broughty v. Bouzy*, No. CV2226458SDWJRA, 2023 U.S. Dist. LEXIS 136681, *6 (D.N.J. Aug. 7, 2023). Simply because a statement is offensive does not make the statement actionable. For the foregoing reasons as well as those identified in Defendant Clement's Brief in Support of his Motion to Dismiss, Plaintiffs' claims for defamation fail.

D. **Plaintiffs lack standing to bring a trademark infringement claim.**

In both the Briefs in Support of their first Motions to Dismiss and the Briefs in Support of their second Motions to Dismiss, Defendants Dew and Clement both raised the issue that

Plaintiffs lacked standing to bring the trademark infringement claims because they failed to plead sufficient facts to establish that they are registrants of the subject trademark. Plaintiffs failed to plead any further facts to clarify their license status in the First Amended Complaint and in their brief in opposition to Defendants Clement and Dew's second Motions to Dismiss again only state that the trademark was "licensed to [Plaintiffs] in connection with their activities related to the #Walkaway campaign." (Plaintiffs' Brief in Opposition, p. 24, ECF No. 40).  As discussed in prior briefing, a mere "license" is insufficient to establish standing to sue for trademark infringement under 15 U.S.C. §1114. Plaintiffs seem to acknowledge their lack of registrant status by offering to join WalkAway Campaign LLC, the owner of the trademark to the suit. (Plaintiffs' Brief in Opposition, p. 24, ECF No. 40). Plaintiffs had the opportunity to add WalkAway Campaign LLC when they amended their complaint the first time and failed to do so, despite having notice of the issue. They should not be allowed to add WalkAway Campaign LLC now. Even if they added WalkAway Campaign LLC, the current Plaintiffs, as mere licensees, would not have standing to bring the trademark infringement claim they currently assert.

### E.   Plaintiffs do not establish the use of the mark in commerce.

Plaintiffs fail to establish that *Defendant Clement and Dew* used the subject mark in comer. Rather, Plaintiffs focus their very brief response to Defendants Clement and Dew's argument that Plaintiffs failed to allege the mark's use in commerce on the fact that www.walkawaypac.org has commercial activity and satisfies the use in commerce requirement. The argument as to whether www.walkawaypac.org satisfies use in commerce misses the point.

Plaintiffs must establish that the mark has been used by *Defendants* in commerce. The basis for

Plaintiffs' purported trademark infringement and false designation of origin claims is the

www.walkawaypac.com website—that the www.walkawaypac.com website infringes the

www.walkawaypac.org website.  In fact, the language Plaintiffs cite from *United We Stand Am.,*

*Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92 (2nd Cir. 1997), is part of a discussion of

whether the defendant in that case's use of the mark at issue in that case was commercial, not

whether the mark was used commercially by the plaintiff.  The court in *United We Stand Am.*,

discussed the case of *L.L. Bean, Inc. v. Drake Publrs., Inc.*, 811 F.2d 26 (1st Cir. 1987) wherein L.L.

Bean catalogue alleged a number of trademark claims when a magazine published a parody of

the L.L. Bean catalogue pretending to offer "Back-to-School-Sex" products. While the *United We*

*Stand Am.* Court would have phrased the *L.L. Bean* case's holding a little differently, they noted

that "[t]he point was rather that the defendant's use of plaintiff's mark was an integral part of

the humorous message. It poked fun at the plaintiff, but did not cause consumer confusion as to

source or origin." *United We Stand Am.*, 811 F.2d at 92. They distinguished the case before them

from the *L.L. Bean* case as in the case before them, the defendant's use of the subject mark

sought to identify the defendant as part of the same political organization of its origin and used

the mark in connection with "services" covered under the Lanham Act. *Id.*  The situation before

this court is more akin to the *L.L. Bean* case and usage than the *United We Stand Am.* case and

usage.

   Plaintiffs also cite *Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F.

Supp. 3d 451, 456 (E.D. Pa 2014) in support of a broad interpretation of the term "services." The

*Valley Forge* case is also more helpful to the position and argument of Defendants Dew and

Clement than to Plaintiffs. In *Valley Forge*, the question was whether the defendants' speech was

commercial in nature in a dispute between an academy and an alumni association where the

defendants utilized the plaintiffs' marks to solicit funds for alumni association services. *Id.* at

453-456.  Both the plaintiff academy and the alumni association defendant were using the mark

at issue to solicit funds and therefore the court concluded the alumni association defendants

were using the mark in commerce. *Id.* As discussed in Defendant Clement's Brief in Support of

his Motion to Dismiss, there is no commercial activity or services being had on the

www.walkawaypac.com website. (Brief in Support of Clement MTD 2 p. 17-18, ECF No. 37).

There are no links identifying goods to be purchased, there are no links to donate, there is no

solicitation of funds or opportunity for visitors to the site to pay money. The appropriate

inquiry is into whether a defendant's use of the subject mark is commercial, not whether the

plaintiff's use of the mark is commercial. Here, the evidence is clear that there is no commercial

activity on the www.walkawaypac.com website and this is not a case where two entities are

trying to use the same mark in competing efforts to raise funds. Plaintiffs have failed to establish

the subject mark's use in commerce and therefore dismissal of Plaintiffs' third, fourth, and sixth

causes of action is appropriate.

**F.   Plaintiffs fail to establish or plausibly allege likelihood of confusion**.

Neither Plaintiffs' First Amended Complaint or Plaintiffs' Brief in Opposition to

Defendants' motion provides any indication as to how visitors to the www.walkawaypac.com

website would have confusion with the www.walkawaypac.org website.  Plaintiffs repeatedly

assert that the purpose of the www.walkawaypac.com website is to "lure and confuse members

of the public" but fail to state what it would "lure and confuse" them into doing.  No reasonable visitor to the www.walkawaypac.com website would think that the content was published, authorized or approved by Plaintiffs. Moreover, as discussed above, there is nothing for a visitor to act upon with that confusion, if it did exist—no alternative product to purchase, no alternative cause to support with financial donations, nothing. There is no competition between the websites. There is no actual attempt to "pass off" the .com website as being the product of the .org people. Plaintiffs have not and cannot plausibly allege likelihood of confusion between the trademark and this allegedly infringing website and counts III, IV, and VI of their First Amended Complaint should be dismissed.

### G.  Plaintiffs' claim for civil conspiracy fails.

Plaintiffs have not pleaded sufficient facts to establish a plausible claim for civil conspiracy, in part because civil conspiracy requires the commission of an underlying tort, which Plaintiffs have not established, and in part, because Plaintiffs have failed to plead facts supporting civil conspiracy as to Defendant Clement. The arguments supporting Defendant Clement's position are elucidated in Defendant Clement's Brief in Support of his Motion to Dismiss. Defendant Clement would additionally note, however, that when addressing their defamation claims, Plaintiffs argued that Defendant Clement should only look at paragraph 178 for the allegedly defamatory statements, not the rest of the First Amended Complaint, including the "Allegations Relating to All Claims," but here, when asked to point to allegations supporting conspiracy on the part of Defendant Clement, Plaintiffs point to paragraphs 31 through 48, which fall within the "Allegations Relating to All Claims" and not to paragraphs

within Count VII of their First Amended Complaint.  Yet again, Plaintiffs make clear that they have failed to meet the pleading rules; Plaintiffs' First Amended Complaint fails to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 U.S. Dist. LEXIS 100643 (D. Neb. March 31, 2016). Plaintiffs have failed to establish a plausible basis for their civil conspiracy claim and thus such claim should be dismissed.

### H.  Amendment would be prejudicial to Defendant Clement.

Plaintiffs seek leave to amend their complaint *again*, citing the liberal amendment policy of the Federal Rules, but such amendment would be prejudicial to the defendants who have already been participating in this case.  As discussed above, this case is on its second round of motions to dismiss by Defendants Dew and Clement. Countless hours have been expended responding to Plaintiffs' Complaint and First Amended Complaint. Plaintiffs request ignores the fact that they already had the opportunity to fix all of the errors and issues present with their first Complaint as they had the benefit of having received the first Motions to Dismiss of Defendants Dew and Clement.  Yet, they failed to fix or address the issues. Neither Defendant Dew nor Clement raised new substantive challenges to Plaintiffs' First Amended Complaint from the original Complaint. Allowing Plaintiffs to amend *again* would be prejudicial to the already participating defendants as this would be the third time since the relatively recent inception of Plaintiffs' case that they had to respond to Plaintiffs' claims. Further, as discussed throughout the brief, amendment would be futile with regard to some of the claims presented.

Accordingly, Plaintiffs' request for leave to file a Second Amended Complaint should be dismissed.

## CONCLUSION

Plaintiffs' claims against Defendant Clement fail for the reasons identified in Defendant Clement's Brief in Support of his Motion to Dismiss and the foregoing brief. Plaintiffs should not be afforded yet another opportunity to amend their complaint as they were already on notice of the deficiencies of their initial brief when they filed the First Amended Complaint and failed to cure the defects at that time.

Dated this 20th day of May, 2024.

Respectfully submitted,

DAVID S. CLEMENT, Defendant
By: */s/ Leslie S. Stryker Viehman*
Nolan, Olson & Stryker, P.C., L.L.O.
444 Regency Parkway Dr., Ste. 109
Omaha, NE 68114
402-932-5126
Leslie S. Stryker Viehman, #25556
Brian D. Nolan, #17764
leslie@nolanolson.com
bnolan@nolanolson.com

CERTIFICATE OF COMPLIANCE

I, Leslie S. Stryker Viehman, hereby certify that the foregoing complies with Nebraska Local Rule 7.1(d)(1)(B). I certify this Memorandum contains 4,883 words, which includes the Memorandum's case caption, signature block and certificate of compliance.

*/s/ Leslie S. Stryker Viehman*