IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRANDON STRAKA, WALKAWAY CAMPAIGN PAC, and WALKAWAY FOUNDATION,<br><br>    Plaintiffs,<br><br>  vs.<br><br>DAVID S. CLEMENT, @BRAWNDOSNITCHKA, @CHICHIVISION18, @MIKECLOVER7, @STONEPGH, THATSQUITEAWALK, @HIGHENANONTOO, @TOOLEJK, and @ZIBTARA,<br><br>    Defendants. | **8:24CV24**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on motions to dismiss filed by Defendant David S. Clement ("Clement") and Defendant @Zibtara, also known as Miranda Dew ("Dew"). Filing No. 36; Filing No. 33. Clement and Dew have filed their motions to dismiss under Fed. R. Civ. P. 12(b)(1), (2), (3), and (6) for lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Filing No. 33; Filing No. 36.

This case involves claims of trademark infringement, tortious interference, and defamation. Filing No. 29 at 32. The Court has carefully reviewed the motions, briefs in support and in opposition, the exhibits attached to declarations, and the relevant case law. For the reasons laid out below, the Court will grant the motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) with leave to amend.

1

## I.    BACKGROUND

Plaintiff, Brandon Straka, lives in Omaha, Nebraska, and is a conservative journalist, political commentator, activist, and social media influencer.  Filing No. 29 at 1–2.  Straka founded Walkaway PAC and the Walkaway Foundation designed to "encourage[] and support[] Americans who have identified with the political Left to 'walk away' from divisive politics and extremism."  Id. at 1.

Defendants are Twitter[1] users who have tweeted about Plaintiffs and created a fake website mocking the Walkaway entities.  Id. at 2–3.  Straka alleges Defendants tortiously interfered with his business relationships with various donors, vendors, and other entities by means of hostile social media posts and direct contact with third parties.  Id. at 33.  Straka further alleges Defendants defamed him with their inaccurate social media posts.  Id. at 34–35.  He also asserts claims for trademark infringement and false designation of origin/unfair competition under both federal and Nebraska state trademark law for Defendants' use of the phrase "walk away" on their parody website.  Id. at 43–44.  Lastly, Straka alleges Defendants engaged in a civil conspiracy to commit the above acts.  Id. at 47–48.  He seeks injunctive relief and damages.  Id. at 48.

Plaintiffs have served only two of the defendants, Clement and Dew.  At this time, the remaining defendants are identified only by their Twitter handles.  Clement and Dew moved to dismiss Plaintiffs' claims against them, arguing lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.  Filing No. 33; Filing No. 36.  The Court addresses personal jurisdiction first and, finding that issue dispositive, does not reach the remaining arguments for dismissal.

---

[1] The Amended Complaint repeatedly refers to "Twitter" but notes the company is now known as "X."  Filing No. 29 at 7.  The Court will utilize the language used in the complaint.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). A plaintiff's prima facie showing "must be tested, not by pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (internal quotation marks and citation omitted). The party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011). The pleadings, affidavits, and declarations submitted must be viewed in the light most favorable to the non-moving party, and any conflicts in the evidence must be resolved in that party's favor. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003).

In determining whether personal jurisdiction over a nonresident defendant exists, the Court must determine whether: (1) the requirements of Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, are satisfied; and (2) the exercise of jurisdiction is permitted by the Due Process Clause of the Fourteenth Amendment. *See Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007). Since the Nebraska long-arm statute extends jurisdiction to the outer boundaries of due process, the personal jurisdiction analysis merges into a single due process inquiry. *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003). The court need only determine whether exercising personal jurisdiction over the defendant complies with due process. *Id.*

Due process requires that a nonresident defendant have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). The Due Process Clause permits the exercise of specific personal jurisdiction over a defendant if "the defendant [has] purposefully established minimum contacts in the forum State such that it should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) *Corp. v. Rudzewicz*, 471 U.S. at 474. To evaluate whether the contacts at issue in the lawsuit are sufficient, five factors are relevant: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the defendant's contacts; (3) the relationship of the cause of action to the defendant's contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020).

When the cause of action involves an intentional tort, a plaintiff can use an "effects" test to obtain specific personal jurisdiction over a nonresident defendant. *Calder v. Jones*, 465 U.S. 783, 104 (1984). "[The *Calder*] test allows the assertion of personal jurisdiction over nonresident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). The test requires a showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and 3) caused harm, the brunt of which was suffered— and which the defendant knew was likely to be suffered—in the forum state. *Id.* The test is construed narrowly, and "mere effects in the forum state are insufficient to confer personal

jurisdiction" without additional contacts. *Id.* at 797. Those additional contacts must be more than isolated connections, as those connections "are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 549 (8th Cir. 2011).

Additionally, the *Calder* test is subject to two limitations the Supreme Court made clear in *Walden v. Fiore*, 571 U.S. 277 (2014). First, the defendant's relationship with the forum state must arise out of contacts that the defendant him or herself created with the forum state. *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021). Second, the court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with people who reside there. *Id.* Simply put, "the 'proper question' for personal jurisdiction 'is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'" *Id.* (quoting *Walden*, 571 U.S. at 290). In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

## III.    DISCUSSION

The causes of action that would establish personal jurisdiction in this case involve intentional torts. Filing No. 29 at 32–48. Both Defendants Clement and Dew live outside the forum state of Nebraska. Clement lives in New York City. Filing No. 38-1 at 1. Dew lives in Austin, Texas. Filing No. 35-1 at 1. Since neither are residents of Nebraska, and both are accused of intentional torts, the *Calder* effects test is informative for determining if the Court can assert personal jurisdiction over them. *See Calder v. Jones*, 465 U.S. 783, 104 (1984). To assert personal jurisdiction for a nonresident defendant accused of intentional torts, the *Calder* test requires a showing that the defendant's acts (1) were

intentional, (2) were uniquely or expressly aimed at the forum state, *and* (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (emphasis added). The Court construes the *Calder* test narrowly, and "mere effects in the forum state are insufficient to confer personal jurisdiction" without additional contacts. *Id.* at 797. Those additional contacts must be more than isolated connections, as those connections "are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 549 (8th Cir. 2011). Additionally, the limitations to the *Calder* test set forth in *Walden* instruct the Court that "the plaintiff cannot be the only link between the defendant and the forum." *Morningside Church, Inc.*, 9 F.4th at 620.

### A. *Calder* Test Applied to the Trademark Allegations

The use of a trademark while knowing the use is an infringement, is an intentional tortious wrongdoing. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 (8th Cir. 1991); *see also ZO Skin Health, Inc. v. HBA & MFL Inc.*, No. 8:21CV317, 2022 WL 20679647 (D. Neb. Aug. 8, 2022). As such, it may be grounds to confer personal jurisdiction on a nonresident defendant under a forum state's long-arm statute if the statute confers jurisdiction to the full extent allowed by the Due Process Clause. *Johnson, 614 F.3d at 797.* However, a minimum contacts analysis, as required by the Due Process Clause, still applies. *Id.* As with any other claim, the *Calder* effects test is instructive for establishing personal jurisdiction over a nonresident defendant in a case involving trademark infringement. *Id.* at 798.

6

To subject a nonresident defendant to personal jurisdiction for Lanham Act claims, the defendant's infringing use of a trademark must be "uniquely or expressly aimed" at the forum state. *Johnson*, 614 F.3d at 798. That requirement comes from the second *Calder* factor. *Id.* at 796. *Johnson* is instructive here, as it involves a website. In *Johnson*, plaintiffs claimed the infringing website used a registered trademark to advertise a cat breeding business. *Johnson*, 614 F.3d at 797. Not only did the *Johnson* court decline to confer personal jurisdiction based on the possibility that a forum state resident made contact with the defendant through their website, but it also foreclosed use of the *Calder* test unless the plaintiff can establish that the infringing website is "uniquely or expressly aimed" at the forum state. *Johnson*, 614 F.3d at 798.

Plaintiffs in this case maintain a website to promote their organization using the domain www.WalkAwayPac.org. Filing No. 29 at 44. Defendants in this case maintain a website with the domain www.WalkAwayPac.com. Filing No. 29 at 44. The defendants' website uses the hashtag #WALKAWAY, which is a registered trademark.[2] Filing No. 29 at 44. While the defendants' website contains plenty of material about Brandon Straka and his affiliated entities, nothing about the website indicates that it is targeted to Nebraska. This analysis of harm would fail the second *Calder* factor—which in the context of an infringing website, requires the website to "uniquely or expressly" target the forum state. *Johnson*,

---

[2] The registered trademark at issue in this case is #WALKAWAY, U.S. Reg. No. 5,868,605. Filing No. 29 at 43. The harm in a trademark infringement case is felt where the trademark holder has its principal place of business. *Dakota Industries, Inc.*, 946 F.2d at 1388. In this case, the holder of the mark is registered in New York. The complaint states the trademark has been licensed to "Plaintiffs," which would include Brandon Straka, a Nebraska resident, along with Walkaway PAC and Walkaway Foundation, both of which are Virginia non-profits. Filing No. 29 at 4. There is a question as to whether Plaintiffs, as mere licensees rather than trademark holders, would have standing to bring this trademark infringement claim. *See Zetor N. Am., Inc. v. Rozeboom*, No. 3:15-CV-03035, 2018 WL 3865411, at *5 (W.D. Ark. Aug. 14, 2018). However, the Court declines to decide this issue at this time, as Defendants did not raise it and, in any case, no personal jurisdiction exists as explained below.

614 F.3d at 796. In this case, the Court cannot establish personal jurisdiction because the alleged infringement by a website meant for the world at large is not uniquely or expressly aimed at Nebraska.

### B. *Calder* Test Applied to the Defamation Allegations

The *Walden* limitations on the *Calder* effects test for personal jurisdiction are relevant in the inquiry into the plaintiff's defamation allegations. In particular, the Court notes that "the plaintiff cannot be the only link between the defendant and the forum." *Morningside Church, Inc.*, 9 F.4th at 620.

Plaintiffs have painstakingly documented a litany of alleged defamatory statements made by Defendants which is included in the Amended Complaint's Exhibit 1. Filing No. 29-1. The statements are exclusively made by Defendants on Twitter. *Id.* While the 380-page exhibit contains a helpful table of contents pointing to specific Tweets Plaintiffs claim are defamation, there are no sections of the table of contents that point to Tweets that would connect defendants to Nebraska as the forum state, as required by *Walden*. As a basis for claiming this Court's specific personal jurisdiction, Plaintiffs merely contend Defendants "purposely directed their [online] activities toward and have harmed" the Plaintiff "who is a resident of the State of Nebraska." Filing No. 29 at 6. But "the 'proper question' for personal jurisdiction 'is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'" *Morningside Church, Inc.*, 9 F.4th at 620 (quoting *Walden*, 571 U.S. at 290)). After a thorough review of the Tweets at issues, none appear to be targeted to Nebraska. *See* Filing No. 29-1. They are directed to a wide online world. *Id.*

8

While Plaintiffs' allegations of defamation are voluminous, without a showing that the statements establish a connection with Nebraska, Plaintiffs themselves appear to be the only connection between Defendants and the forum state.  This is the very situation *Walden* seeks to prevent and is therefore inadequate to establish personal jurisdiction.

### C.  Probation Officer Contact

There is one allegation apart from the Tweets that establishes a more direct connection to the forum state.  Plaintiffs claim Defendants contacted Brandon Straka's probation officer in Nebraska.  Filing No. 29 at 7.  That activity would be intentional (the first *Calder* factor), it would be aimed at the forum state (the second *Calder* factor), and it would demonstrate the Defendants sought to cause harm that would be felt in the forum state (the third *Calder* factor).  *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).  Specifically, Plaintiffs claim,

> Defendants, in particular, Defendant Clement, have discussed their plans to contact Mr. Straka's probation officer in Nebraska, stating that they have sent letters to her, and detailing their efforts to contact her to falsely report Mr. Straka for violating the terms of his probation, and encouraging others to do so.

Filing No. 29 at 7.

Plaintiffs allege three actions related to contacting the probation officer: planning to contact them, sending letters to them, and encouraging others to do the same.  Filing No. 29 at 7.  Only one of those actions—the act of sending letters to the probation officer in Nebraska—would qualify as a contact with Nebraska as a forum.  Further, Plaintiffs have failed to state how many letters Defendants allegedly sent.  Particularly challenging is that this allegation does not specify if all Defendants, or only Defendant Clement, have undertaken the action—sending the letters—that would qualify as a contact with Nebraska.

Nonetheless, the claims about Defendants' contact with the probation officer are jurisdictional allegations that are not expressly controverted by Defendants, including in their declarations. Filing No. 38-1; Filing No. 35-1. Therefore, at this stage of the litigation, the Court must accept the uncontested allegations as true for jurisdictional purposes and view them in the light most favorable to Plaintiffs. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1076 (8th Cir. 2004).

However, even if Plaintiffs' uncontested claims about the probation officer are true, the Eighth Circuit commands the *Calder* test should be construed narrowly. It has held defendants must have more than "isolated connections" with the forum state for the Court to assert specific personal jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 549 (8th Cir. 2011). Isolated contacts "are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Id.* Put another way, the Eighth Circuit "has rejected scattered communications" as a basis for specific personal jurisdiction. *Laver v. Peal*, 516 F. Supp. 3d 931, 936 (D. Minn. 2021).

*Laver* is a defamation case, and it provides a helpful application of Eighth Circuit precedent to determine whether Defendants' contact with Mr. Straka's probation officer would be the kind of scattered communications that are insufficient to exercise personal jurisdiction. *Laver* involved a dispute between a Minnesota attorney and an Illinois resident. *Laver*, 516 F. Supp. 3d at 933. Among other alleged wrongs, the Illinois resident sent a letter regarding the Minnesota attorney to that state's Professional Board of Responsibility. *Id.* at 935. That letter—which the defendant sent to a disciplinary body with authority over the plaintiff—was not enough to form the basis for specific personal jurisdiction because it was a "scattered communication." *Id.* at 936. Plaintiffs in this case have accused Defendants of

10

similar conduct. They allege Defendants sent letters to a disciplinary body—in this case, the probation officer—in the forum state. These letters would be precisely the kind of scattered communications that the Eighth Circuit rejects as the basis for establishing personal jurisdiction.

## IV.    CONCLUSION

The Court finds it cannot exercise personal jurisdiction over Defendants Clement and Dew in this case. Personal jurisdiction is a threshold issue for the Court. As such, the Court grants the motions to dismiss without addressing the alternative bases for dismissal. However, in their opposition to the motions to dismiss, Plaintiffs seek leave to amend their complaint, which the Court grants.

THEREFORE, IT IS ORDERED THAT:

1. Defendants' motions to dismiss, Filing No. 33 and Filing No. 36, under Fed. R. Civ. P. 12(b)(2) on grounds that this Court lacks specific personal jurisdiction, are granted.

2. Plaintiffs' request for leave to amend their complaint is granted. Plaintiffs shall have 21 days to file an amended complaint.

3. Should Plaintiffs choose not to file an amended complaint, this matter is then referred to the Magistrate Judge for purposes of progressing the case, including identifying and serving the remaining Defendants who are currently only identified by their Twitter handles.

Dated this 17th day of December, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge